**Sanford J. BERGER, Plaintiff,**

v.

**The SUPREME COURT OF OHIO, et al., Defendants.**

No. C–2–84–1227.

United States District Court,
S.D. Ohio, E.D.

Sept. 14, 1984.

Sanford J. Berger, Cleveland, Ohio, pro se.

David E. Northrop, Jeffrey Jurca, Asst. Attys. Gen., Columbus, Ohio, for defendants.

### MEMORANDUM AND ORDER

DUNCAN, District Judge.

This matter is before the Court on plaintiff Sanford Berger's motion for a preliminary injunction preventing defendants from enforcing the provisions of Canon 7 B(1)(c) of the Supreme Court of Ohio's Code of Judicial Conduct and Rules I and II of the Rules for the Government of the Judiciary of Ohio. Plaintiff claims that the above mentioned provisions deprive him of free speech in violation of the First and Fourteenth Amendments to the United States Constitution and of equal protection in violation of the Fourteenth Amendment. The Court's findings of fact and conclusions of law follow hereinafter.

Defendants in this case are the Supreme Court of Ohio, its Chief Justice and Justices, Angelo Gagliardo, Disciplinary Counsel to the Supreme Court of Ohio, and the Board of Commissioners on Grievances and Discipline of the Judiciary. Defendant Supreme Court of Ohio is responsible for the governance of the bar of the State of Ohio including the disciplining of lawyers, judicial candidates, and judges, *see* Ohio Constitution Art. IV, ¶ 5(B), and in pursuance of that duty has promulgated the Code of Judicial Conduct and Rules for the Government of the Judiciary of Ohio. Defendant Angelo Gagliardo is the Disciplinary Counsel of the Supreme Court of Ohio and is responsible for investigating and prosecuting disciplinary complaints against judicial candidates and judges in Ohio. Defendant Board of Commissioners on Grievances and Discipline of the Judiciary hears grievances against judges and judicial candidates and refers misconduct determinations to the Supreme Court for review and action.

Canon 7 B(1)(c) of the Code of Judicial Conduct provides:

(1) A candidate, including an incumbent judge, for a judicial office: ... (c) should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; announce his views on disputed legal or political issues; or misrepresent his identity, qualifications, present position, or other fact.

Rules I and II of the Rules for the Government of the Judiciary of Ohio provide for disciplinary action, including disbarment, against members of the bar who violate the rules of conduct of the Supreme Court of Ohio.

Plaintiff Berger is a candidate for the office of Judge of the Cuyahoga County Court of Common Pleas, Division of Domestic Relations, and as such has expressed a desire to publicly discuss his views, and make certain pledges and promises, regarding reform of practices in the office he seeks. More specifically, plaintiff has manifested a desire to publicly state that as a judge in Cuyahoga County he would "first attempt to have the parties who appear before him mediate their disputes, without the presence of their attorneys, in order to remove some of the adversary affects (sic) of the divorce system upon the litigants." *See* Plaintiff's Supplemental Brief in Support of His Motion for Preliminary Injunction. Plaintiff also desires to "criticize the excessive use of trial referees by the court and that he would hear most matters himself; or be able to criticize traditional dehumanizing procedures." *Id.* At the hearing on plaintiff's motion, plaintiff reiterated his desire to criticize what he perceives to be deficiencies in the current administration of domestic relations law in Cuyahoga County and to voice his views on needed reforms. Plaintiff also stated at the hearing that he would like to make publicly known his "philosophy" or "platform."

It is plaintiff's contention that Canon 7 B(1)(c) not only prohibits judicial candidates from making public statements about pending cases, but also prohibits general criticisms of the incumbent and/or the adminis-

tration of the court, and pledges regarding reform of judicial practices. Indeed, it appears to be plaintiff's view that pursuant to Canon 7 B(1)(c) a candidate for judicial office may not publicly state anything other than that he will faithfully and impartially perform the duties of the office. *See* Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunctions, p. 2. Plaintiff asserts that such a restriction on speech violates his First and Fourteenth Amendment rights. Alternatively, plaintiff suggests that there are no ascertainable standards as to what constitutes a statement with regard to the "faithful and impartial performance of one's duties in office." Plaintiff maintains that the uncertain scope of the rule, in conjunction with the possible penalties for violation thereof, has the effect of "chilling" his right of free speech. Therefore, plaintiff asserts, the rule should be declared unconstitutional on its face for vagueness. *See* Plaintiff's Supplemental Brief, p. 5.

Finally, plaintiff contends that Canon 7 B(1)(c) denies him equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution because it arbitrarily and without sufficient justification applies only to candidates for state judicial, as opposed to legislative and executive, positions.

As stated above, a hearing has been held to determine whether a preliminary injunction should issue.

Prior to turning to the question of whether injunctive relief is warranted, however, the Court feels compelled to examine two preliminary issues raised by defendants: first, whether plaintiff has standing to bring suit, and second, whether the pendency of a related proceeding before the Supreme Court of Ohio warrants abstention in the case at bar.

*Standing*

In their memorandum in opposition to plaintiff's motion, defendants state that at present "no investigation of Plaintiff [by defendants for violation of a rule of conduct] is under way; in fact, defendants

have not even received any complaints concerning Plaintiff." Defendants contend that until the state's investigative and enforcement powers are actually utilized, defendants have acted only in a legislative capacity, and are thereby immune from suit. *See Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). Defendants add that as of yet plaintiff has not even outlined an anticipated course of conduct with sufficient clarity to create a potential case or controversy for the court, much less given defendants cause to initiate an investigation. As a result, defendants assert that plaintiff lacks standing at this point to challenge defendants with regard to the constitutionality of Canon 7 B(1)(c). The Court does not agree.

■ Plaintiff has indeed outlined with relative specificity a preferred course of conduct in running for judicial office and has clearly expressed a desire to make concrete criticisms of the incumbent and current administration. For example, plaintiff wishes to publicly criticize what he perceives to be the current administration's overuse of referees and to pledge to limit such use. Plaintiff has also voiced a need for the administration to encourage more parties to mediate their problems among themselves, without the presence of attorneys.

■ Nor does it appear that the threat to plaintiff of prosecution under Canon 7 B(1)(c) should he publicly issue the above statements, is purely "imaginary or speculative." In his supplemental brief, plaintiff notes an article from the Canton *Repository* which purports to quote defendant Gagliardo, in his capacity as Disciplinary Counsel, in connection with another disciplinary proceeding against a judicial candidate. *Disciplinary Counsel v. Hon. Loren E. Souers, Jr.*, Case Number DD84–3, which also involves alleged violations of Canon 7 B(1)(c), is currently pending before the Supreme Court of Ohio. The article states:

> He [Gagliardo] said even if Souers had been correct in all of his allegations, he still violated judicial canons that forbid candidates from challenging the records of incumbents. ... He said candidates should refer only to their background, awards they have received and endorsements from groups that support them.

See Plaintiff's Supplemental Brief, p. 7 and Exhibit "C" to that brief, an article from the Canton *Repository*. Defendant Gagliardo has not attempted, in the case at bar, to disavow those comments or object to their reported scope or context. In fact, such a viewpoint of the scope of the Judicial Code of Conduct is reiterated in Disciplinary Counsel's Brief in Opposition to Respondent's Objections to the Findings of Fact which was filed in the *Souers* case. In that brief, Disciplinary Counsel makes clear that in his view the Code of Judicial Conduct prohibits candidates for judicial office from making comments that are critical of the incumbent, regardless of the truth or falsity of those allegations. To summarize, Disciplinary Counsel is the individual charged with investigating and prosecuting judicial candidates for violations of the Code of Judicial Conduct; there has been a public manifestation, which defendant Gagliardo has not disavowed, of his belief that any criticism of an incumbent judge in the course of a judicial campaign is a violation of the Supreme Court's rules of judicial conduct; this understanding of the Judicial Code has been reiterated by Disciplinary Counsel in pleadings filed with the Supreme Court of Ohio in *Souers;* and Disciplinary Counsel has demonstrated a readiness to initiate prosecution of judicial candidates whose conduct he considers to be inconsistent with such a view of the Judicial Code. Given these circumstances, it is fallacious to conclude that as a candidate for judicial office plaintiff faces merely an "imaginary" threat of prosecution should he follow through with his announced intention to voice various criticisms of the incumbent. To the contrary, his fear of prosecution appears to be quite reasonable. Plaintiff need not expose himself to actual prosecution to present a justiciable controversy to this Court; the threat

of prosecution is enough. *See Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) and *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). Preconduct challenges to the validity of laws burdening First Amendment rights are among the essential bulwarks of a system of free expression. *Morial v. Judiciary Commission of State of LA,* 565 F.2d 295, 298 (5th Cir.1977).

▪ Additionally, defendants are not in this case shielded from suit by legislative immunity. Plaintiff seeks declaratory and injunctive relief from the threat of impending investigation, prosecution and perhaps, sanction. Defendants are before the Court not in any legislative capacity, but in their capacity as investigators and enforcers. In such a capacity, legislative immunity does not apply. *See Supreme Court of Virginia v. Consumer's Union, supra.*

It is, therefore, the Court's opinion that plaintiff has standing to bring suit in this case.

### Abstention

Defendants have also brought the *Souers* case to the Court's attention. *Souers* involves, among other things, alleged violations of Canon 7 B(1)(c), and the respondent in that case has raised First Amendment defenses. Defendants contend that the pendency of the *Souers* case warrants abstention by this Court in the case at bar, under the Pullman doctrine, *see Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), since the Supreme Court of Ohio in *Souers* might interpret Canon 7 B(1)(c) in such a manner so as to render unnecessary or substantially modify the federal constitutional questions presented in the case at bar.

▪ It is the Court's belief that abstention is not, under the circumstances at hand, appropriate. The abstention doctrine is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers. *Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377 (1964). Although most of the issues posed by plaintiff are extant in *Souers,* significant dissimilarities exist. Plaintiff has questioned the meaning of the language "pledges and promises of conduct in office other than the faithful and impartial performance of the duties of the office." The meaning and constitutionality of this provision does not appear to be before the Supreme Court of Ohio in *Souers,* and it is, therefore, unlikely that the court in that case will resolve all of plaintiff's constitutional concerns herein.

▪ Due to the imminency of the upcoming election, and plaintiff's desire to obtain some resolution of his concerns in time to campaign accordingly, the Court is reluctant to delay for an undue or indeterminate length of time consideration of plaintiff's request for a preliminary injunction. Such a delay may be quite costly where the vagueness of a state rule or statute may inhibit the exercise of First Amendment freedoms. Therefore, the Court declines to abstain on the consideration of plaintiff's request for a preliminary injunction against the enforcement of Canon 7 B(1)(c) and Rules I and II.

### Preliminary Injunctive Relief

To obtain preliminary injunctive relief plaintiff must show (1) a strong or substantial likelihood of success on the merits; (2) irreparable injury; (3) that the issuance of a preliminary injunction would not cause substantial harm to others; and (4) that the public interest would be served by issuing a preliminary injunction. *Mason County Medical Assn. v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977). No single factor is necessarily dispositive; proper judgment entails a balancing of all elements involved.

### Likelihood of Success on the Merits

▪ Plaintiff's first obligation is to convince the Court of a substantial likelihood of his success on the merits. Plaintiff contends that the enforcement of Canon 7 B(1)(c) deprives him of his First and Fourteenth Amendment rights to freedom of speech. Plaintiff correctly states that al-

though defendants have a duty to regulate the conduct of the bar, as such regulations move closer to impairing First Amendment rights, they must withstand a higher level of scrutiny to pass constitutional muster. *Morial v. Judiciary Commission, supra,* 565 F.2d at 300. When a regulation does run afoul of the First Amendment in a significant or substantial manner, then courts are obliged to invoke strict constitutional scrutiny. Under such a test, the state must show a compelling interest, to be achieved by means that are closely drawn to avoid any unnecessary abridgement. See *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978).

■ Canon 7 B(1)(c) contains three prohibitions: (1) announcing views on disputed legal or political issues, (2) making pledges or promises of conduct in office other than the faithful and impartial performance of duties in office, and (3) misrepresenting one's identity, qualifications, present position, or other fact. The Court is not persuaded that this provision prohibits criticisms of judicial administrations and incumbents, assuming such criticisms are not untruthful or misleading. *See* the Supreme Court of Kansas' analysis of this issue in *In re Inquiry Relating to Baker,* 218 Kan. 209, 542 P.2d 701 (1975). There is evidence in the record to suggest that defendant Disciplinary Counsel maintains an opinion to the contrary; however, Disciplinary Counsel's position on the issue is simply irrelevant for purposes of this Court's inquiry into the constitutionality of Canon 7 B(1)(c)—it is the province of the Supreme Court of Ohio, not Disciplinary Counsel, to authoritatively interpret and enforce the Ohio Code of Judicial Conduct. As of now, the Supreme Court of Ohio has not given this Court reason to believe that the Canon means anything more than what it says on its face.

■ Nor is the Court convinced of the substantial likelihood of success of plaintiff's restrictive reading of the provision regarding pledges and promises. One of the purposes of Canon 7 B(1)(c) is to prohibit candidates for judicial office from making pledges or promises which appeal to prejudices or special interests. Plaintiff Berger intends to pledge, among other things, to increase the judge's personal involvement in the administration and resolution of cases, and to attempt to encourage more direct dispute resolution among the parties themselves. Pledges such as these, the Court believes, relate to the faithful performance of the duties of judicial office, and are therefore expressly exempted from the scope of Canon 7 B(1)(c). *Id.* Finally, plaintiff has not convinced the Court of the existence of a substantial likelihood that the intent and meaning of the provision regarding campaign pledges is so unclear as to render it properly subject to facial attack as unconstitutionally void for vagueness. *See CSC v. Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973).

■ The Court believes that even under a standard of strict scrutiny, the state's regulation is necessary to achieve a compelling state interest. Plaintiff does not dispute that the state has a compelling interest in assuring that its elected judges are protected from untruthful criticism and that judicial campaigns are run in a manner so as not to damage the actual and perceived integrity of state judges and the bar; hence, the provision against misrepresentation. Additionally:

> Ours is an era in which members of the judiciary often are called upon to adjudicate cases squarely presenting hotly contested social or political issues. The state's interest in ensuring that judges be and appear to be neither antagonistic nor beholden to any interest, party, or person is entitled to the greatest respect.

*Morial,* 565 F.2d at 302. Hence, the prohibitions against announcing predetermined views on disputed legal or political issues, and against making pledges of conduct oth-

**76**

er than those relating to the faithful and impartial performance of duties in office. The Court finds that plaintiff has not demonstrated a substantial likelihood that these interests are outweighed by whatever intrusion on the First Amendment is caused by prohibiting judicial candidates from making misleading or fallacious statements or political pledges.

■ The Court also is not persuaded by plaintiff in this case that the singling out of judges' campaign conduct violates the equal protection clause of the Fourteenth Amendment. The very purpose of the judicial function makes inappropriate the same kind of particularized pledges and predetermined commitments that mark campaigns for legislative and executive office. A judge acts on individual cases, not broad programs. Canon 7 B(1)(c) appears to appropriately recognize this distinction between candidates for judicial and for executive and legislative office. In short, plaintiff has not demonstrated a substantial likelihood that the Canon denies judicial candidates equal protection under the Fourteenth Amendment.

■ The Court finds that plaintiff has not persuasively demonstrated a substantial likelihood of success on the merits of his claim that Canon 7 B(1)(c) is unconstitutional on its face.

Nor has plaintiff demonstrated that irreparable injury will occur to his interests should the Court decline to issue a preliminary injunction since plaintiff has not persuaded the Court that Canon 7 B(1)(c) prohibits the statements which plaintiff has expressed a desire to make in the upcoming election.

Finally, the state has a compelling interest, as explained above, in preventing the occurrence of the kind of conduct to which Canon 7 B(1)(c) is addressed, and the public would suffer great injury should enforcement of the Canon be enjoined.

Therefore, plaintiff's motion for a preliminary injunction is DENIED.