In re **JUDICIAL CAMPAIGN COMPLAINT AGAINST RUNYAN.**

Commission of Five Judges
Appointed By
Supreme Court of Ohio.

No. 98–2541.

Decided Feb. 25, 1999.

*Alvin E. Mathews, Jr.,* for respondent Jeffrey Runyan.

ORDER OF THE COMMISSION OF JUDGES.

This matter came for review before a five-judge commission appointed by the Supreme Court pursuant to Gov.Jud.R. II(5)(E)(1) and R.C. 2701.11 upon a judicial campaign complaint filed by Joe Murray against respondent Jeffrey Runyan. Members of the commission were Judges William G. Lauber, Chair, Melissa Byers–Emmerling, John Bessey, Judith Nicely, and Margaret K. Weaver.

This cause arose out of a judicial election in Ashland County in which the parties were the opposing candidates for an open common pleas court judgeship. Complainant alleges in his disciplinary grievance that respondent made the following campaign promise or pledge: "If elected, I will imprison all convicted felons," in violation of Canon 7(B)(2)(c) of the Code of Judicial Conduct. He allegedly made the statement during an interview with a Richland County newspaper. Based upon that complaint, a finding of probable cause was made, a formal complaint was filed charging a violation of Canon 7(B)(2)(c), and a hearing was held before a hearing panel, pursuant to Gov.Jud.R. II(5)(C) and (D). The hearing panel concluded that the respondent had violated the canon and made recommendations for penalty.

The case was reviewed by teleconference on December 8 and 14, 1998, after the entire commission had an opportunity to review the transcript, exhibits, and arguments. The majority of the commission concluded that it must find in the record clear and convincing evidence, first, that the respondent said what complainant alleges he said, and, second, if he did say it, that it constitutes a Canon 7(B)(2)(c) violation.

Canon 7(B)(2)(c) states:

"A judge or judicial candidate shall not do any of the following:

" * * *

"Make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office * * *."

Ohio law states that to be clear and convincing, the evidence must have more than simply a greater weight than the evidence opposed to it, and it must produce in the trier of fact's mind a firm belief or conviction about the facts to be proved or the truth of the matter. *Lansdowne v. Beacon Journal Publishing Co.* (1987), 32 Ohio St.3d 176, 512 N.E.2d 979; *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118.

The statement at issue arose at an interview with a newspaper in Richland County on October 15, 1998, at which four people were in attendance. The record shows that complainant and respondent were both present as interviewees. Reporter Mark Caudill, who was charged with writing an account of the interviews, was present. Also present was the paper's city editor, Michael Shearer, who represented the editorial board and apparently conducted the interview. He was also charged with writing an endorsing editorial. The interview of the two candidates lasted less than forty-five minutes.

Reporter Mark Caudill's article appeared on October 19, 1998, and in it he specifically quotes the respondent as follows: "I would run a court that views convicted felons from the standpoint that they are going to be incarcerated. The penalty is the best and first way of dealing with felons."

On October 21, 1998, City Editor Michael Shearer wrote his editorial endorsing the complainant and saying, "Runyan vows to uphold Henderson's tradition, saying he would put all convicted felons in prison. Murray said each individual case must be considered."

The same day the editorial appeared in the morning paper, and six days after the October 15 interview, complainant filed his grievance.

In his testimony before the hearing panel, City Editor Michael Shearer testified as follows:

"Q. Would you describe to the Panel that discussion as you recall it?

"A. Mr. Runyan had made a statement that he wanted to continue to serve the tradition of the court under the sitting Judge Henderson.

"And I asked a follow-up question about what he meant by that statement, what does that mean? And he responded about—with a statement I guess which is to the question, to the effect that convicted felons should be put in prison."

After being shown his editorial with the statement that Runyan would put all convicted felons in prison, he was asked:

"Q. Did Mr. Runyan make that statement to you in the course of his interview with you?

"A. As far as I can recollect, yes."

Later, during cross-examination, he testified:

"Q. Is that the document reflecting the article written by Mark Caudill?

"A. Yes it is.

"Q. Is that a true and accurate copy of that article?

"A. It would appear to be.

"Q. I'd like you to read that portion of the article, these two paragraphs here.

"A. This in a direct quote from Mr. Runyan. We have a very special situation in Ashland County, he said. Judge Henderson has a reputation of being a very conservative judge. With his success, that needs to be continued. I would run a court that views convicted felons from the standpoint that they are going to be incarcerated. The penalty is the best and first way of dealing with felons.

"Q. And apparently you surmised that from his statement he indicated that he would put all convicted felons in prison?

"A. That was the impression that I was left with, yes.

"Q. That's what you surmised?

"A. That's what I surmised and that's what I surmised from reading the quote here today.

"Q. He indicates here that something is the best and first way. You don't find that to mean that there may be other ways of dealing with felons?

"A. I suppose you could read it that way; by me—the impression I got from sitting with him and reading the quote again was that all convicted felons would be imprisoned. I guess in my reading of it, I did not take that to mean that of being absolute. But I thought that was what the gist of it was.

"Q. You deem it to be an absolute?

"A. That's—that would be with Mr. Runyan. I guess I found it a little hard to believe that would be the case. But that's what the statement was.

"Q. That's the way you interpreted it?

"A. That's the way I interpreted it, yes."

There was no redirect.

Therefore, the only statement by City Editor Shearer that respondent said "If elected, I will put all convicted felons in prison" is to be derived from his answer that as far as he could recollect, respondent made that statement, although under cross-examination he testified that he surmised that, that it was the gist of Runyan's answer, that it was how he interpreted Runyan's answer, and that the October 19 article by Reporter Mark Caudill contained "a direct quote" by Runyan.

The complainant testified that the respondent said that if elected, he would imprison all convicted felons.

During cross-examination, he further testified as follows:

"Q. And the quotes of Mr. Caudill, you don't have any reason to disagree with his attributions to Mr. Runyan?

"A. His quote of Mr. Runyan isn't what I recall Mr. Runyan to say. Specifically—I've testified as to what Mr. Runyan which supports—which is reiterated in Mr. Shearer's editorial on the 21st.

" * * * *

"Q. If elected, I will imprison all convicted felons.

"A. Exactly.

"Q. Is that what you remember him saying?

"A. That's what I remember him saying.

"Q. And you wrote that based upon your memory?

"A. Yes."

The respondent testified that he made the statement contained in Reporter Caudill's October 19 article and it was substantially accurate. The only evidence that Reporter Caudill's quotation was not accurate came from the complainant on cross-examination as set forth above in which he testified that the reporter's quote was not what he recalled respondent to have said, although Michael Shearer, city editor, described the quotation in the October 19 paper as a direct quotation.

The hearing panel's findings of fact portion of its decision includes the following statement in its final paragraph:

"Respondent testified on his own behalf. He indicated that the quotes in the October 19th news article and the October 21st editorial were substantially accurate."

A careful review of the record reveals that at no time did respondent indicate that the quote of the October 21 editorial was substantially accurate. In fact, on page 71 of the transcript, the respondent gives the following testimony:

"Q. Finally, did you ever indicate to the voters that you would, as is indicated in the complaint, if elected, I will imprison all convicted felons.

"A. I don't recall ever saying that.

"Q. Did you say it.

"A. No."

Counsel for complainant never inquired of respondent concerning the statement in the October 21 editorial.

 Based upon this evidence, which it believes to be exhaustive of the evidence in the transcript on the issue, the majority concludes that there is not clear and convincing evidence that respondent said, "If elected, I will imprison all felons." In an alleged violation of this genus, the words of the candidate are what

must be considered, not an interpretation of his words or conjecture of another as to their meaning. The reason this is an important issue is that the "direct quote," as the city editor called the statement in the October 19 article, and the city editor's October 21 editorial statement, which he himself said was an interpretation, are not the same. It was the editorial statement that was asserted by the complainant in his grievance as his recollection. However, the grievance was filed not at the time of the directly quoted statement, but after the editorial statement appeared in print. These two statements are different in relevant ways in both form and substance.

The statement quoted in the October 19 article is made "from the standpoint that" which is in the form of a philosophical viewpoint, whereas the statement in the editorial, and quoted in the complaint, is an affirmative declaration. These differing forms are significant when it comes to the second determination that would have to be made in this case, to wit, does the statement represent a pledge or promise made by the candidate? An affirmative declaration can be, in appropriate circumstances, a pledge or promise. A philosophical viewpoint, while perhaps inappropriate under another section of the canon, is unlikely to rise to a pledge or promise as reasonable persons would define them.

The substance of the two statements differ as well. The October 19 statement speaks of incarceration, which Black's Law Dictionary defines as including jail and prison, and which Ohio criminal law professionals define to include jail and community-based correction facilities, as well as prisons. The editorial and the complaint use the words "prison" and "imprison." On page 20, lines 7–10, of the transcript, City Editor Shearer states that respondent answered his question "to the effect that convicted felons should be put in prison." The word "all" was in the editorial statement: "Runyan vows to uphold Henderson's tradition, saying he would put all convicted felons in prison." By changing the word "incarceration" to "prison" by the addition of the words "all" and "vows," the statement is transformed to what would reasonably be considered a pledge or promise.

The majority thereupon concludes that complainant failed to prove by clear and convincing evidence that respondent said, "If elected, I will imprison all convicted felons." And although the hearing panel appears to deal with the statement of October 19, this was not part of the majority's review, as it is not properly before the commission as an alleged violation, although it had been publicly disseminated prior to the filing of this grievance.

Therefore, we reverse the action of the hearing panel and dismiss the complaint.

*So ordered.*

WILLIAM G. LAUBER, Chair, MELISSA BYERS-EMMERLING and MARGARET K. WEAVER, JJ., concur.

JUDITH NICELY and JOHN BESSEY, JJ., dissent.

Judith Nicely and JOHN BESSEY, Judges, dissenting.

We would affirm the Findings of Facts, Conclusions of Law and Recommendations of the Panel of the Board of Commissioners on Grievances and Discipline as filed on December 1, 1998. The panel could best determine the credibility of the witnesses regarding the facts. The facts are not disputed, as respondent states in the transcript that the newspaper articles were accurate regarding his statement "I would run a court that views convicted felons from the standpoint that they are going to be incarcerated."

The issue in this case is one's interpretation of the law and what statements are acceptable under the Judicial Canon in the course of a judicial campaign. Canon 7(B)(2) states:

"A judge or a judicial candidate shall not do any of the following:

" * * *

"(c) Make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office[.]"

Having reviewed the case law in Ohio and other states, we find that the statement "I would run a court that views convicted felons from the standpoint that they are going to be incarcerated" violates this canon because it implies that a judge has prejudged an issue without hearing the specific individual facts or applicable law.

The Ohio Judicial Canons follow the ABA Model Code, which has also been adopted in part by other states. The purpose of these canons is to improve public confidence in and respect for the judiciary and to establish appropriate standards of conduct that to the objective observer appear impartial. It is not the conduct that may be dominate and prevailing in some communities.

Case law is consistent that states have a compelling interest in limiting a judicial candidate's speech. The Ohio Supreme Court recently held that the canons are binding on judicial campaign conduct. *In re Complaint Against Harper* (1996), 77 Ohio St.3d 211, 218, 673 N.E.2d 1253, 1260.

The Ohio Supreme Court in *Harper* referred to a case analogous to this case from Washington. *In re Kaiser* (1988), 111 Wash.2d 275, 759 P.2d 392. In *Kaiser,* an incumbent judge made the following campaign statements:

"Judge Kaiser is tough on drunk driving.... Will Roarty, the opponent, receives the majority of his financial support from drunk driving defense attorneys, whose primary interests are getting their clients off.'

"* * *

"The point is clear, I am a tough, no-nonsense judge and this group of attorneys wants to prevent my re-election." *Id.* at 278, 759 P.2d at 394–395.

The Washington Supreme Court found that these statements violated the canons because the statements suggested that justice was for sale and that defendants are not entitled to a fair trial. The court further found that the statements regarding contributions by DWI defense attorneys violated the canons by calling into questions the integrity and impartiality of the judiciary.

In *Harper,* the Ohio Supreme Court also referred to *Berger v. Supreme Court of Ohio* (S.D.Ohio 1984), 598 F.Supp. 69. The facts in *Berger* are interesting. In *Berger,* the judicial candidate filed a preliminary injunction against the enforcement of the Ohio Code of Judicial Canons. The Supreme Court held that while a judicial canon prohibits a candidate from announcing views on disputed legal or political issues such as making pledges or promises of conduct in office other than a faithful and impartial performance of duties in office, it does not prohibit criticisms of judicial administration or incumbents, assuming those criticisms are not untruthful or misleading. Pledges by judicial candidates to increase the judge's personal involvement in administration and resolution of cases which encourage dispute resolution are exempted from the judicial canons.

The court in *Berger* held that one of the purposes of the canons was to prohibit judicial candidates from making pledges or promises that appeal to prejudices or special interests.

"Plaintiff does not dispute that the state has a compelling interest in assuring that its elected judges are protected from untruthful criticism and that judicial campaigns are run in a manner so as not to damage the actual and perceived integrity of state judges and the bar; hence, the provision against misrepresentation. Additionally:

" 'Ours is an era in which members of the judiciary often are called upon to adjudicate cases squarely presenting hotly contested social or political issues. The state's interest in ensuring that judges be and appear to be neither antagonistic nor beholden to any interest, party, or person is entitled to the greatest respect. ' " (Emphasis added.) *Id.,* 598 F.Supp. at 75, quoting *Morial v. Louisiana Judiciary Comm.* (C.A.5, 1977), 565 F.2d 295, 302.

It is also helpful to review other states' cases that have interpreted this canon. In *Ackerson v. Kentucky Judicial Retirement & Removal Comm.* (W.D.Ky.1991),

776 F.Supp. 309, 314, Ackerson, a judicial candidate, petitioned the commission to determine with respect to what statements or promises could be made. The court held:

"The Canon does not prohibit all speech by a judicial candidate on legal issues. A candidate may fully discuss, debate, and commit himself with respect to legal issues which are unlikely to come before the court. A candidate may also fully discuss and debate legal issues which are likely to come before the court. It is only with respect to the latter that the candidate is prohibited from making direct or indirect commitments.

"We find that there is a compelling state interest in so limiting a judicial candidate's speech, because the making of campaign commitments on issues likely to come before the court tends to undermine the fundamental fairness and impartiality of the legal system. The canon is closely tailored to this end.

"All candidates for elective office, including judicial candidates, presumably come equipped with options and predilections which are the result of their life experience. A judge, however, must cast these aside, saving only his or her intrinsic notion of fundamental fairness. The canon recognizes that pre-election commitments by judicial candidates impair the integrity of the court by making the candidate appear to have pre-judged an issue without benefit of argument of counsel, applicable law, and the particular facts presented in each case."

The Kentucky Supreme Court found that pro-life issues discussed by a candidate were issues that were likely to come before the court and that their discussion was in violation of the canons. *Deters v. Judicial Retirement & Removal Comm.* (1994), 873 S.W.2d 200. The court concluded:

"Mr. Deters publicly announced his view on the abortion issue for the admitted purpose of obtaining support from voters interested in that issue. In doing so, he attempted to obtain an unwarranted and illegal advantage in the election over his opponents. In so acting, he violated [the canon] by making statements that commit or appear to commit the candidate to a position with respect to cases, controversies or issues that are likely to come before the court."

In another case from the Supreme Court of Kentucky, a judicial candidate made a commitment to the voters regarding her position on the issue of probation in child abuse cases. *Summe v. Judicial Retirement & Removal Comm.* (1997), 947 S.W.2d 42. The court stated:

"The obvious crux of the letter is that appellant's opponent lets child abusers off easy and that if appellant was elected, she would not. As was aptly stated in a treatise on the various rules of judicial conduct throughout the United States:

" 'Ethics advisory opinions address the propriety of numerous statements and pledges candidates have proposed to use in the course of a campaign. The

general sense of these opinions is that anything that could be interpreted as a pledge that the candidate will take a particular approach in deciding cases or a particular class of cases is prohibited.' Jeffrey M. Shaman et al., Judicial Conduct and Ethics, Section 11.09 p. 372 (Michie 2nd ed., 1995)."[1] *Id.* at 46–47.

The court in *Summe* also held:

" 'The aim of proceedings instituted pursuant to this section is to improve the quality of justice administered within the Commonwealth by examining specific complaints of judicial misconduct, determining their relation to a judge's fitness for office and correcting any deficiencies found by taking the least severe action necessary to remedy the situation. The target is not punishment of the judge.' " *Id.* at 48, quoting *Nicholson v. Judicial Retirement & Removal Comm.* (1978), 562 S.W.2d 306, 308.

There are two other cases from Kentucky which found violations of this canon. In 1994, a Kentucky judge was censured for distributing campaign materials containing the phrase "solid reputations for law and order" and "does not allow plea bargaining." *In re Nolan* (1984), Ky. Jud. Retirement & Removal Comm., unreported. Another Kentucky judge was suspended from office for ten days without pay for suggesting in a campaign advertisement that he would rule favorably toward a particular group if elected. *In re Ehlschide* (1982), Ky. Jud. Retirement & Removal Comm., unreported.

In Indiana a judicial candidate was reprimanded for distributing campaign materials in which the candidate pledged, if elected, to "stop suspending sentences" and to "stop putting criminals on probation." In *In re Haan* (1997), 676 N.E.2d 740, the Supreme Court of Indiana held:

"A judge has a duty to consider requests for probation or suspension of sentences in accordance with the law and in light of any mitigating circumstances or evidence submitted in individual cases.

"The parties agree that Mr. Hann's pledges committed him to the outcome of criminal cases in violation of [the canon] and in a manner inconsistent with a judge's duties to impose sentences in accordance with the law and the evidence. Nothing less than the constitutional right to due process commands such an approach to a judge's duties. There was nothing 'innocuous' about such a pledge. In effect, Hann's campaign materials, promised the voters he would decide cases in his court without regard to evidence or applicable rules of law." *Id.* at 741.

Both the State Bar of Michigan and ABA Committee on Ethics and Professional Responsibility have issued an opinion that a candidate cannot use the slogan "a strict sentencing philosophy," as it gives the impression he or she would act in a

---

1. This book was a valuable source of information.

biased manner in certain cases. State Bar of Michigan Comm. on Professional & Judicial Ethics, Formal Op. No. C–1219 (1980); ABA Comm. on Ethics & Professional Responsibility, Informal Op. No. 1444 (1980).

There are two cases that one must address from the federal courts regarding candidate's statements. In *Stretton v. Disciplinary Bd. of Supreme Court of Pennsylvania* (C.A.3, 1991), 944 F.2d 137, a judge desired to announce his views on the following issues:

(a) the need for election of judges with a "activist" view;

(b) criminal sentencing and the rights of victims of crime;

(c) "reasonable doubt" and how we apply the standard;

(d) the need to more closely scrutinize the work of district justices;

(e) the need for various changes in judicial administration; and

(f) the need for greater sensitivity toward hiring minority lawyers and law clerks.

In *Stretton*, the court interpreted the Pennsylvania canon to mean that "disputed legal or political issues" refers to only those issues that are likely to come before the court. The court found that this restriction is narrowly tailored to serve the state's compelling interest in an impartial judiciary. The court stated:

"The public has the right to expect that a court will make an assessment of the facts based on the evidence submitted in each case, and that the law will be applied regardless of the personal views of the judge. Taking a position in advance of litigation would inhibit the judge's ability to consider the matter impartially. Even if he or she should reach the correct result in a given case, the campaign announcement would leave the impression that, in fact, if not in actuality, the case was prejudged rather than adjudicated through a proper application of the law to facts impartially determined. See *Cox [v. Louisiana* (1965) ], 379 U.S. [559] at 565, 85 S.Ct. [476] at 481 [13 L.Ed.2d 487 at 492–493] (State may protect against public perception that a judge's action was in part the result of improper influence)."

The United States Seventh Circuit Court of Appeals in *Buckley* tried to distinguish *Stretton* from its finding that such a rule was unconstitutional. *Buckley v. Illinois Judicial Inquiry Bd.* (C.A.7, 1993), 997 F.2d 224. In *Buckley*, the judge circulated campaign literature that stated that "he had never written an opinion reversing a rape conviction."

"Our conclusion that the supreme court's rule is invalid creates undoubted tension with the Third Circuit's decision in *Stretton v. Disciplinary Board*, 944 F.2d 137 (3d Cir.1991), which upheld an almost identically worded rule that had

been promulgated by the Supreme Court of Pennsylvania. *Stretton* is distinguishable, although precariously. While the court employed a similar form of words as the district court judge in our case to narrow the application of the rule, it seems to have understood the rule to be confined to campaign statements that would leave the impression that a case had been 'prejudged' *id.* at 144, which seems to fold the 'announce' clause back into the 'pledges or promises' clause understood as equivalent to the ABA's new 'commitment' canon. The court listed a number of issues, including the rights of victims of crime and the importance of the constitutional rights to privacy, as lying outside the rule as interpreted both by it and the chief counsel of the disciplinary authority. *Id.* at 139, 142. The court did not have the benefit of the insight into the scope of such a rule as is provided by a ruling such as that of the Illinois Courts Commission that condemned so innocuous a statement as a candidate's report of his past record in ruling on a particular type of case (Justice Buckley's comment on rape convictions). Nor did it have to confront the complexities introduced by a concession that a candidate has a broad right of reply or that the word 'announce' should be read to mean foretell one's vote." *Id.* at 230.

To summarize, we find that the law supports the Findings of Fact and Recommendation of the hearing panel. Campaign statements which view "convicted felons as going to be incarcerated" are prejudicial. These statements appeal to special interests and unfairly treat felons as a class of persons without respect to their individual differences.