Richard F. HayseChair, Kansas Commission on Judicial Performance Kansas Judicial Center 201 S.W. Tenth Street, Suite 262 Topeka, Kansas 66612-1507
Dear Mr. Hayse:
On behalf of the Kansas Commission on Judicial Performance, you inquire whether the non-disclosure provisions as applied to elected judges in K.S.A. 2006 Supp. 20-3204(c)(1) and K.S.A. 2006 Supp. 20-3205
are constitutional in light of Republican Party of Minnesota v.White, 536 U.S. 765, 153 L.Ed.2d 694, 122 S. Ct. 2528 (2002), andKansas Judicial Watch v. Stout, 440 F.Supp.2d 1209 (D. Kan. 2006). Based upon those cases, your concern is whether the non-disclosure provisions violate an elected judge's constitutional right of free speech guaranteed by the First Amendment to the United States Constitution.
I. Judicial Selection
In Kansas, Supreme Court Justices and Court of Appeals Judges are selected by gubernatorial appointment from a nominating commission.[1]
At the expiration of their term, the justices and judges must be retained by voters at a general election in order to continue in office for another term.[2]
However, district court judges are elected by the voters of each judicial district unless those voters have adopted the method of nonpartisan selection.[3] Under the latter method, the district court judges are selected by gubernatorial appointment from candidates submitted by a nominating commission.[4] Currently, seventeen judicial districts use the method of gubernatorial appointment and fourteen judicial districts use the method of partisan election.[5] Depending upon the method used by a judicial district, the district court judges may either stand for re-election or retention for another term by the voters.[6]
II. Judicial Performance Evaluations
Under K.S.A. 2006 Supp. 20-3204(a), Kansas Commission on Judicial Performance (the Commission) sends a survey to "court users"[7] who have observed a judge's or justice's performance or interacted with a judge or justice. The survey asks the court users to evaluate the judge or justice on his or her "ability, integrity, impartiality, communication skills, professionalism, temperament and administrative capacity."[8] The survey results are then collected and tabulated.[9]
Pursuant to K.S.A. 2006 Supp. 20-3205, the survey, survey results, and performance evaluation results "are confidential and shall not be disclosed."[10] More specifically, the "evaluation[s] of judges subject to political elections shall be used solely for self-improvement" and such judges "shall not reveal data from any portion of the survey or the results of the survey."[11] Similarly, K.S.A. 2006 Supp. 20-3204(c)(1) requires the Commission to develop plans that "[p]rotect the confidentiality" of the judicial performance evaluations that are "used only for self-improvement." Thus, the performance evaluations of judges subject to political election cannot be disclosed by such judges or the Commission.
By contrast, the Commission is authorized by K.S.A. 2006 Supp.20-3204(c)(2) and (3) to "make the judicial performance evaluation results widely available when they are to be used to assist voters in evaluating the performance of judges and justices who are subject to retention elections" and to "make public recommendations regarding whether or not to retain judges and justices subject to retention elections." Additionally, subsection (d) allows those judges and justices to respond to their survey results before the Commission makes them public.[12]
III. Constitutional Right of Free Speech
The First Amendment of the United States Constitution prohibits the government from abridging a person's freedom of speech and applies to state governments through the Fourteenth Amendment to the United States Constitution.[13] "Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution."[14] A major purpose of the First Amendment is to protect the discussion of governmental issues and candidates for election.[15] Such speech "occupies the core of the protection afforded by the First Amendment."[16]
When the government restricts the content of such core political speech, the courts apply a strict scrutiny test. To survive that test, the restriction must be "narrowly tailored to serve an overriding state interest."[17] The latter part of the analysis is also referred to as "a compelling state interest."[18]
IV. The White and Stout decisions
In White, all judges in Minnesota were selected by popular election and subject to an "`announce clause'" in the Minnesota Code of Judicial Conduct. The clause prohibited judicial candidates, which included incumbent judges, from announcing their views on disputed legal or political issues.[19] The Court determined that the announce clause prohibited speech based upon its content and further that the type of prohibited speech was protected political speech (i.e., the qualifications of candidates for public office). In applying the strict scrutiny test, the court analyzed two asserted compelling state interests for the clause: preserving the impartiality of the judiciary and preserving the appearance of impartiality of the judiciary.[20]
The White Court surmised that there were three possible meanings for impartiality: lack of bias towards the parties in a proceeding, lack of preconception toward particular legal issues, and open-mindedness on issues. It found that the announce clause was not narrowly tailored to serve the impartiality interest regarding lack of bias toward the parties because the clause did not restrict speech about particular parties.[21] The Court next found that, although it may be an interest served by the announce clause, the lack of preconception toward particular legal issues was not a compelling state interest. Noting that Supreme Court Justices had opined on constitutional issues in their prior legal careers, the Court stated it would be "virtually impossible to find a judge who does not have preconceptions about the law."[22]
The Court indicated that the third definition of impartiality meant that the judge is open to persuasion on views opposing his or her preconceptions. The Court stated while this was a desirable quality in a judge, it was not necessary to decide whether the announce clause was directed at open-mindedness on issues because the clause was apparently not adopted for such purpose. It noted that judges often stated their views on disputed legal issues outside of proceedings by teaching or lecturing classes, writing books, and making speeches, and that the Minnesota Code of Judicial Conduct encouraged such activity.[23]
In striking down the announce clause as violative of theFirst Amendment, the White Court stated that it was "not the function of government to select which issues are worth discussing or debating in the course of a political campaign. We have never allowed the government to prohibit candidates from communicating relevant information to voters during an election."[24] Despite this language, it appears the Court left open the possibility that government can impose more restrictions on judicial election campaigns than legislative election campaigns.
Responding to Justice Ginsburg's dissenting opinion, the majority indicated that, "even if the First Amendment allows greater regulation of judicial election campaigns than legislative election campaigns, the announce clause still fails strict scrutiny because it is woefully underinclusive, prohibiting announcements by judges (and would-be judges) only at certain times and in certain forms."[25] Thus, it appears the Court's concern was that the announce clause only applied to certain speech during an election campaign.
In Stout,[26] questionnaires were sent to judicial candidates requesting their views on certain disputed legal and political issues. The Kansas Code of Judicial Conduct, as set out in Supreme Court Rule 601A, prohibited judicial candidates and incumbent judges from making "pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office" (pledges and promises clause) and "statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court" (commit clause).[27] In response to a judicial candidate's inquiry, a panel of the Commission on Judicial Qualifications opined that a judicial candidate was prohibited from answering the questionnaire.[28]
Using the definitions of impartiality from the White decision, theStout court found that the pledges and promises clause and the commit clause were not narrowly tailored to further the state's interest regarding lack of bias toward parties and legal issues, but were narrowly tailored to further the state's interest regarding open-mindedness of the judiciary.[29] Ultimately, however, both clauses were deemed unconstitutional because they had been interpreted in an overbroad manner, thereby operating, in effect, as a de facto
announce clause and, thus, chilling the free speech rights of judicial candidates.[30]
V. Analysis
K.S.A. 2006 Supp. 20-3204(c)(1) and K.S.A. 2006 Supp. 20-3205 prohibit the disclosure of the performance evaluations of judges subject to political election by such judges and the Commission. This particular information examines an incumbent judge's "ability, integrity, impartiality, communication skills, professionalism, temperament and administrative capacity,"[31] i.e., the qualifications of a judicial candidate. In effect, both statutory provisions prohibit protected political speech based upon its content. Under White and Stout, core political speech is highly protected under the First Amendment. To survive a First Amendment challenge, the state must show that the restriction is narrowly tailored to serve a compelling state interest. In those two cases, the compelling state interest was the impartiality of the judiciary, an interest that the Commission has not identified as justification for the restriction.
The information provided to this office included a memorandum from the Commission's legal counsel. This memorandum posited the following possible compelling state interests: (1) promoting fairness in the use of public funds to evaluate a judicial candidate who is subject to a partisan election and (2) preventing a violation of K.S.A. 25-4169a.
 Promoting fairness in the use of public funds to evaluate a judicial candidate in a partisan election
A percentage of docket fees are deposited into a judicial performance fund with the state treasury for use by the chairperson of the Kansas Judicial Council to pay the expenses of the judicial evaluation program.[32] Thus, the surveys and performance evaluations of all incumbent judges and justices, appointed and elected, are publically funded.
One goal of the judicial evaluation program is "to disseminate the results from the judicial performance evaluation process" so that voters can "make informed decisions" about "judges and justices [who] are subject to retention elections."[33] That particular goal comes to fruition through K.S.A. 2006 Supp. 20-3204(c)(2) authorizing the Commission to "make the judicial performance evaluation results widely available" so that they can "be used to assist voters in evaluating the performance of judges and justices subject to retention elections." Paragraph 3 of that subsection goes even further, authorizing the Commission to "make public recommendations" on whether such judges and justices should be retained in their offices.[34] Also, pursuant to K.S.A. 2006 Supp. 20-3204(d), retained judges and justices can respond to their evaluation results before the Commission makes them public.
In contrast to judges and justices who stand for a retention election, judges subject to a partisan election are prohibited by K.S.A. 2006 Supp. 20-3205 from disclosing the results of his or her performance evaluation. The Commission is likewise prohibited by K.S.A. 2006 Supp.20-3204(c)(1) from disclosing the performance evaluation results of judges subject to partisan election.
Construing the above statutes together, the disclosure of the judicial evaluations to assist voters is dependent upon whether a judge is subject to a partisan election or retention election. Only the judicial performance evaluations for judges subject to retention election, and presumably those judges' responses to their evaluations, are authorized to be disclosed to the voters. Accordingly, public funds can be used to evaluate a judicial candidate in a retention election.
The Kansas Supreme Court has indicated that the public's right to be informed about a judge's qualifications is not dependent upon whether a judge is subject to a partisan or retention election. In In reBaker,[35] an incumbent judge experiencing poor health was opposed in a partisan election. The opposing judicial candidate claimed he had good health and promised to improve the quantity and quality of work and to decrease the use of judges from other districts. The successful judicial candidate was disciplined for violating the pledges and promises clause and a clause prohibiting judicial candidates from misrepresenting his or her qualifications. The court found his statements were not violations, stating a legitimate area for debate was the candidates' qualifications. In its view, "the health, work habits, experience and ability of the candidates are all matters of legitimate concern to the electorate who must make the choice."[36] Although the First Amendment was not specifically addressed, the court stated:
 "Under a form of government like our own there must be freedom to canvass in good faith the worth of character and qualifications of candidates for office, whether elective or appointive, and by becoming a candidate, or allowing himself to be the candidate of others, a man tenders as an issue to be tried out publicly before the people or the appointing power his honesty, integrity, and fitness for the office to be filled."[37]
Under Baker, the qualifications of all judicial candidates, elected and appointed, are of utmost concern to the voters. Therefore, if the legislature elects to prohibit the disclosure of the results of the survey and judicial performance evaluation because they were publically funded, such prohibition cannot be dependent upon the method that was used to select the judge. Under a strict scrutiny analysis, the prohibitions in K.S.A. 2006 Supp. 20-3204(c)(1) and K.S.A. 2006 Supp.20-3205 are not supported by a compelling state interest because the prohibitions apply only to judges subject to partisan elections,i.e., it is underinclusive. Thus, it violates the First Amendment.
 Preventing a violation of K.S.A. 25-4169a
The other compelling state interest asserted by the Commission is to prevent a violation of K.S.A. 25-4169a(a). The pertinent part of that statute states:
 "No officer or employee of the state of Kansas, . . . shall use or authorize the use of public funds or . . . the time of any officer or employee of any such governmental agency, for which the officer or employee is compensated by such governmental agency, to expressly advocate the nomination, election or defeat of a clearly identified candidate to state office or local office. The provisions of this section prohibiting the use of time of any officer or employee for such purposes shall not apply to an incumbent officer campaigning for nomination or reelection to a succeeding term to such office or to members of the personal staff of any elected officer."
As discussed above, under K.S.A. 2006 Supp. 20-3204(c)(2) and (3), the Commission is authorized to disseminate the results of performance evaluations for judges and justices who are subject to retention elections so that the voters can evaluate those judges and justices and to publically recommend whether such judges and justices should be retained. In addition, retained judges and justices can respond to their performance evaluations before the Commission releases them to the public. By contrast, the performance evaluations of judges who are subject to partisan elections cannot be disclosed by those judges or the Commission pursuant to K.S.A. 2006 Supp. 20-3204(c)(1) and K.S.A. 2006 Supp. 20-3205.
The provisions in K.S.A. 25-4169a(a) are consistent with the prohibition as applied to the Commission in K.S.A. 2006 Supp.20-3204(c)(1) and to elected judges in K.S.A. 2006 Supp. 20-3205. However, there is no explanation why that same prohibition does not apply to retained judges and justices. More importantly, the provisions in K.S.A. 25-4169a(a) cannot be reconciled with those in K.S.A. 2006 Supp. 20-3204(c)(2) and (3) authorizing the Commission to disclose to the voters the performance evaluations of appointed judges and justices and to recommend whether such judges and justices should be retained.
Therefore, any assertion that the legislature enacted the prohibition against disclosing the performance evaluations for elected judges (K.S.A. 2006 Supp. 20-3204[c][1] and K.S.A. 2006 Supp. 20-3205) in order to prevent a violation of the prohibition against using public funds to advocate for a judicial candidate (K.S.A. 25-4169a[a]) is contradicted by the legislature authorizing the Commission to disclose the performance evaluation for retained judges and justices and to recommend whether such judges and justices should be retained (K.S.A. 2006 Supp.20-3204[c][2] and [3]) and allowing the retained judges and justices to respond to the evaluation results before being released by the Commission (K.S.A. 2006 Supp. 20-3204[d]). Under a strict scrutiny analysis, the prohibition in K.S.A. 2006 Supp. 20-3204(c)(1) and K.S.A. 2006 Supp. 20-3205 is not a compelling state interest because it applies only to judges subject to partisan elections, i.e., it is underinclusive. Thus, it violates the First Amendment.
 Preventing a judicial candidate from using the information in a misleading way
The Commission also provided a memorandum written by Richard E. Levy, a professor at The University of Kansas School of Law. Professor Levy believed another possible state interest was to prevent a judicial candidate from using the information in a misleading way. However, he contends the prohibition is not narrowly tailored to serve that asserted state interest because it also encompasses the disclosure of information that is not misleading. His analysis is supported by the Eleventh Circuit Court of Appeals in Weaver v. Bonner.[38]
In Weaver, Georgia's judicial canon prohibited elected judges from making misleading statements; the asserted compelling state interest was to maintain judicial impartiality and electoral integrity. The court rejected these asserted interests "because, by prohibiting false statements negligently made and true statements that are misleading or deceptive, [the restriction] does not afford the requisite `breathing space' to protected speech."[39] To be narrowly tailored, restrictions on a candidate's speech during a political campaign must be limited to statements made with knowledge of falsity or with reckless disregard as to its falsity. The court held that the restriction was unconstitutional because it was overbroad-encompassing not only false statements made with actual malice but also false statements made negligently. The latter statements are inevitable during free debate and protected under the First Amendment.[40]
Moreover, the state's interest in preventing misleading information about a judge's qualifications is addressed in the Code of Judicial Conduct which prohibits incumbent judges and judicial candidates from "knowingly misrepresent[ing] the identity, qualifications, present position or other fact concerning the candidate or an opponent."[41]
VI. Conclusion
Summarizing, the statutory provisions prohibiting the Commission and elected judges from disclosing data from surveys evaluating the elected judges' judicial performance violate the First Amendment to the United States Constitution because the purported justifications of: (1) promoting fairness in the use of public funds to evaluate judicial candidates in partisan elections; (2) preventing a violation of K.S.A.25-4169a; and (3) preventing judicial candidates from using the evaluations in a misleading manner, do not serve a compelling state interest or are not narrowly tailored to serve those interests.
Sincerely,
Paul J. Morrison
Attorney General
Janet L. Arndt
Assistant Attorney General
PJM:MF:JLA:jm
[1] Kan. Const., Art. 3, § 5(a); K.S.A. 2006 Supp. 20-3005.
[2] Kan. Const., Art. 3, § 5(c); K.S.A. 2006 Supp. 20-3006(b); K.S.A.25-111.
[3] Kan. Const., Art. 3, § 6; K.S.A. 20-2901.
[4] K.S.A. 2006 Supp. 20-2909; K.S.A. 20-2911.
[5] Kansas Judicial Watch v. Stout, 440 F.Supp.2d 1209, 1217 (D. Kan. 2006).
[6] K.S.A. 25-101; K.S.A. 20-2908; K.S.A. 20-2912.
[7] The term "court users" includes "attorneys, litigants, jurors and other persons the commission deems appropriate." K.S.A. 2006 Supp.20-3204(a).
[8] K.S.A. 2006 Supp. 20-3204(a).
[9] Id.
[10] We note K.S.A. 2006 Supp. 20-3205 indicates that the surveys, survey results, and judicial performance evaluation results can be disclosed "in accordance with the rules of the commission or the Kansas supreme court." However, the promulgation and adoption of rules cannot cure constitutional defects in a statute. State ex rel. v. ColumbiaPictures Corporation, 197 Kan. 448, 455 (1966).
[11] K.S.A. 2006 Supp. 20-3205.
[12] It is assumed the Commission releases the responses of the retained judges and justices when it releases their survey results. See also Rule 601A, Code of Judicial Conduct, Canon 5A(3)(e) (2006 Kan. Ct. R. Annot. 590) (an incumbent judge or judicial candidate may respond to attacks on his or her record).
[13] Prager v. Kansas Dept. of Revenue, 271 Kan. 1, 33 (2001).
[14] McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 346 (1995) (internal citation omitted).
[15] Id. at 346.
[16] McIntyre, 514 U.S. at 346.
[17] McIntyre, 514 U.S. at 347.
[18] Republican Party of Minnesota v. White, 536 U.S. 765, 774-75,153 L.Ed.2d 694, 122 S. Ct. 2528 (2002).
[19] Id. at 768.
[20] White, 536 U.S. at 774-75.
[21] White, 536 U.S. at 775-76.
[22] White, 536 U.S. at 777-78.
[23] White, 536 U.S. at 778-79.
[24] White, 536 U.S. at 781-82 (internal citations and quotations omitted).
[25] White, 536 U.S. at 783 (emphasis by Court).
[26] 440 F. Supp. 2d at 1217-18.
[27] Stout, 440 F. Supp. 2d at 1228 (citing Canon 5A[3][d][1] and [ii] [2006 Kan. Ct. R. Annot. 589]).
[28] Stout, 440 F. Supp. 2d at 1218-19.
[29] Stout, 440 F. Supp. 2d at 1230-31.
[30] Stout, 440 F. Supp. 2d at 1233.
[31] K.S.A. 2006 Supp. 20-3204(a).
[32] K.S.A. 2006 Supp. 20-367(a) and K.S.A. 2006 Supp. 20-3207.
[33] K.S.A. 2006 Supp. 20-3203(b).
[34] K.S.A. 2006 Supp. 20-3204(c)(3).
[35] 218 Kan. 209 (1975).
[36] Id. at 213 (internal citation omitted).
[37] Baker, 218 Kan. at 213 (internal citation omitted).
[38] 309 F.3d 1312 (11th Cir. 2002).
[39] Weaver, 309 F.3d at 1319 (internal citation omitted).
[40] Weaver, 309 F.3d at 1320-21.
[41] Rule 601A, Canon 5A(3)(d)(iii) (2006 Kan. Ct. R. Annot. 589).