No. 47,860

*In re* Inquiry Relating to ROBERT M. BAKER, District Judge.

(542 P. 2d 701)

Opinion filed November 8, 1975.

*Rae E. Batt,* of Kinsley, argued the cause and was on the brief for the respondent.

*Edward G. Collister, Jr.,* of Lawrence, argued the cause and was on the brief for the Commission on Judicial Qualifications.

*Per Curiam:* This is an original proceeding to inquire into a complaint against the Honorable Robert M. Baker, Judge of the Sixteenth Judicial District, alleging violations of the Code of Judicial Conduct. This court has jurisdiction under Art. 3, § 15 of the Constitution.

The complaint against Judge Baker involves advertising materials used in his campaign for his present office in 1974, at a time when he was a practicing lawyer holding no judicial office. Such campaigns are governed by Canon 7 of the Code of Judicial Conduct, adopted as Rule No. 601 of this court effective January 1, 1974. The Canons were first promulgated in the November, 1973, advance sheets (213 Kan. No. 1, pp. vii-xvi) and are now found at 214 Kan. xciv-ciii. The specific provision under which the present complaint was brought is 7 B.

"B. *Campaign Conduct.*

"(1) A candidate . . . for a judicial office that is filled either by public election between competing candidates or on the basis of a merit system election:

"(*a*) should maintain the dignity appropriate to judicial office . . . ;

"(*b*) should prohibit public officials or employees subject to his direction or control from doing for him what he is prohibited from doing under this Canon; and except to the extent authorized under subsection B (2) or B (3), he should not allow any other person to do for him what he is prohibited from doing under this Canon;

"(*c*) should not make pledges or promise of conduct in office other than the faithful and impartial performance of the duties of the office; or mispresent [sic] his identity, qualifications, present position, or other fact; or announce his views on disputed legal or political issues, except that he may answer allegations directed against his record in office."

In 1974 the Sixteenth Judicial District (Clark, Comanche, Ford, Gray, Kiowa and Meade counties) selected its district judge at a partisan election. Judge Baker was a candidate against the incumbent, the Honorable Ernest M. Vieux, who had held office since January 10, 1955. When Judge Baker was successful by a narrow margin in the primary election of August 6, 1974, Judge Vieux waged a write-in campaign in the general election in November. Judge Baker was again the successful candidate.

The complaint herein was filed with the Commission on Judicial Qualifications, a body created by Rule No. 602 of this court to assist it in carrying out its constitutional responsibilities in the area of judicial discipline. The Commisson made a preliminary investigation and then instituted formal proceedings by serving a Notice, alleging violations in two counts. Count I dealt with the August, 1974, primary election and Count II with the November, 1974, general election. The Commission held a hearing at which documentary evidence was introduced and both Judge Baker and Judge Vieux testified. There was little, if any, dispute as to the facts. The Commission filed findings of fact and conclusions of law in which it

found violations under Count I in six particulars. (No violations were found under Count II, so we are presently concerned only with the primary election.) It recommended, with one member dissenting, that Judge Baker be publicly censured. The dissenter found only one violation and recommended private censure. Judge Baker filed a petition for review by this court.

The charges against Judge Baker can only be understood against the background of Judge Vieux's situation prior to and during the 1974 campaign. On July 5, 1973, Judge Vieux suffered a heart attack which prevented him from performing any judicial duties until some time in December. At that time he gradually began to reassume the duties of his office, although on a limited basis. He avoided cases of an emotional nature and those requiring a good deal of judicial time. Judges from other districts were assigned to the Sixteenth to help carry the caseload.

Before announcing his candidacy for reelection in early spring, and again before filing in late spring, Judge Vieux consulted with his treating physician. In each instance he was assured that his convalescence was progressing satisfactorily and he was encouraged to make the race.

The six violations of Canon 7 found by the Commission involved Judge Baker's use of three campaign letters, a radio speech, a television commercial and a postcard. We shall examine the first five together, leaving the postcard for later discussion.

The letters, mailed to voters in the district in June and July of 1974, contained such assertions as:

"I am certain that if elected Judge *I can and will improve the quality and quantity of work* that is presently required in the District Court.

"That *because of my health and prior experience, it will no longer be necessary to import judges* from other districts to help handle the case load of the 16th Judicial District." (Emphasis added.)

Further:

"*I hope to remedy some of the problems now existing.* One of the most serious problems is the inconvenience to jurors called to jury duty occasioned by *long delays in the presentation of evidence to them.*

"As your District Judge, I pledge:

"1. Jury trials and all other court business shall commence at 9:00 a. m. of a given day.

"2. There will be no unnecessary delays or unnecessary recesses merely for the benefit of court officers or lawyers.

"3. Business will be expedited in such a manner as to give full and proper consideration to all matters, and with diligence and dispatch.

"4. The Court will return to serving the citizens instead of being a convenience to lawyers.

. "*If I am to bring about these reforms,* I must first be elected." (Emphasis added.)

The radio speech was in substance a recapitulation of the letters, emphasizing the need to eliminate delay in handling lawsuits, and pledging Judge Baker's full-time efforts toward that end. The television spot commercial showed first an empty judge's chair in a courtroom and then Judge Baker going up the courthouse steps. The accompanying sound track consisted of a ticking clock and then an announcer saying in part, "Justice delayed is justice denied! Let's put our Courts on a full time status, Robert Baker will be a full time judge."

In finding that this material violated Canon 7 the Commission did not specify which portion of the Canon was violated, but from the briefs and oral argument we conclude that the Commission felt it was the part of 7 B (1) (c) which states that a candidate "should not make pledges or promise of conduct in office other than the faithful and impartial performance of the duties of the office."

We are unable to agree that the material violated this prohibition, or any other part of the Canon. There is a clear exception for pledges of the "faithful . . . performance of the duties of the office." As we read the material complained of it pledges on behalf of Judge Baker that he will be a full-time judge, that he will work hard to earn his pay, that he will pay prompt attention to the people's business, and that he will be considerate of the time of jurors and litigants. These all, we think, relate to the "faithful performance" of the duties of judicial office and are in our opinion proper subjects for a judicial candidate's pledge.

Former Canon 30 of the old Canons of Judicial Ethics provided in part:

"A candidate for judicial position should not make or suffer others to make for him, promises of conduct in office which appeal to the cupidity or prejudices of the appointing or electing power; he should not announce in advance his conclusions of law on disputed issues to secure class support, and he should do nothing while a candidate to create the impression that if chosen, he will administer his office with bias, partiality or improper discrimination." (198 Kan. at xv.)

While the present Canon may appear broader in its prohibition against pledges and promises, its thrust was intended to be that of former Canon 30. It is those pledges and promises which appeal

to prejudices or special interest which are prohibited. On the other hand, a pledge of increased efficiency such as was made here is aimed at the legitimate interests of the entire electorate; it is one of those pledges permitted as being for the "faithful performance" of a judge's duties.

In this advertising Judge Baker also suggested that because of his good health it would no longer be necessary to import "outside" judges to hear cases in his district. The Commission points out that this is not strictly true—outside judges have been necessary since Judge Baker took office. The occasion, however, has been Judge Baker's disqualification in particular cases, arising from his participation in them as a practicing attorney before ascending the bench. We cannot find here any misrepresentation of substance.

From the emphasis in the Commission's brief, and from some of the questions posed at the hearing by members of the Commission, it appears that exception was taken to Judge Baker's repeated references to his pledges as "reforms." By this terminology, it was felt, Judge Baker was suggesting that the Sixteenth District did not then have a full-time judge who could administer justice without delay.

We agree that this was the clear import of all of the campaign material, but we fail to see how this fact alone constitutes a violation of Canon 7. The election was a partisan one, with candidate pitted against candidate. A candidate for nonjudicial office is free to announce his stand on the issues he must pass upon in office, and to pledge his vote on those issues; the judicial candidate is forbidden to enter this customary campaign arena. Hence, unless the election is to be a pure popularity contest based on name recognition alone, the only legitimate area for debate is the relative qualifications of the candidates. In our view the health, work habits, experience and ability of the candidates are all matters of legitimate concern to the electorate who must make the choice.

Justice Burch, although dealing with a libel case, stated this fundamental proposition:

"Under a form of government like our own there must be freedom to canvass in good faith the worth of character and qualifications of candidates for office, whether elective or appointive, and by becoming a candidate, or allowing himself to be the candidate of others, a man tenders as an issue to be tried out publicly before the people or the appointing power his honesty, integrity, and fitness for the office to be filled." (*Coleman v. MacLennan*, 78 Kan. 711, 723, 98 Pac. 281.)

Here, Judge Vieux's physical capacity to perform his judicial

duties bore directly on his "fitness for the office to be filled." It may seem unfair to attack the record of an incumbent judge for alleged failings which are beyond his power to prevent or rectify. Nevertheless we find nothing in the Canons which would immunize a judge from criticism, whether for faults produced by ill health or any other cause. As was stated by Justice Brewer long ago, "no judge, and no court, high or low, is beyond the reach of public and individual criticism." (*In re Pryor*, 18 Kan. 72, 76.) So long as we continue to have partisan elections for judicial office we think a challenger must be free to criticize an incumbent's record, *so long as the criticism is accurate.*

Our examination of the five pieces of campaign literature described above reveals no substantial inaccuracy, nor does it show any area in which they exceeded the bounds of campaign activity permitted under Canon 7. Accordingly as to those five specific charges we find no violation.

The same cannot be said, however, for the postcard prepared for distribution to supporters who were to mail it to friends. The postcard said:

"I am voting for ROBERT M. BAKER for JUDGE OF THE DISTRICT COURT (Counties of Clark, Comanche, Ford, Gray, Kiowa & Meade) for the following reasons:

1. *Robert M. Baker* is eminently qualified for the office of *Judge of the District Court.* As the Judge, there can be no question but that he will always be fair, prompt, courteous and efficient.

2. Because of a heart attack and other physical ailments, it is extremely difficult for the present judge to satisfy the strenuous and rigorous demands of the office.

3. The present judge, at the end of 1974, will be eligible to take a disability retirement and a monthly pension of over $1,270 per month.

I hope you and your friends will vote with me to elect ROBERT M. BAKER in the Republican primary on August 6, 1974."

Judge Baker testified that he had calculated the amount of the pension Judge Vieux would purportedly be entitled to, and approved the preparation of a considerable quantity of these postcards. He had made no inquiry as to Judge Vieux's physical condition after he returned to the bench, but did rely on his personal observation on one occasion in April, 1974, when Judge Vieux appeared to be having difficulty walking. He was not familiar with the provisions of K. S. A. 20-2609 that disability retirement benefits are available to a judge only if he is "permanently" physically or mentally disabled.

Judge Vieux testified that he was 61 years old, was not permanently disabled, had never been told that he was permanently disabled, and was in fact entitled to no retirement benefits at the end of 1974.

The import of the postcard was that Judge Vieux's defeat at the polls would do him little personal damage—he would still be nicely taken care of through his pension. This was not so, and by asserting that it was Judge Baker and his supporters did "misrepresent" a "fact" in violation of Canon 7 B (1) (c).

Judge Baker testified that soon after the postcards were distributed for mailing he had second thoughts about them. As a result he personally went about getting them back from the distributees and succeeded in retrieving all but 163 or 165 of them. Those which he retrieved were not used, but were surrendered at the post office for a partial refund of the prepaid postage. This conduct on Judge Baker's part obviously mitigates the seriousness of the violation, and is to his credit. It cannot obliterate it, however, because equally obviously *some* of the missing 160-odd postcards were mailed to voters and thereafter came to the attention of Judge Baker's opposition.

If called upon in the first instance to determine the appropriate sanction for this violation we might well have concurred in the view of the Commission's dissenter that it should be private censure. There was in the last analysis but one violation, accompanied by mitigating circumstances. We are, however, past the stage where this matter may be resolved in private. A violation having been found, the respondent must be and is hereby censured.

It is further ordered that the costs of this proceeding be taxed to the respondent.

MILLER, J., not participating.