No. 100,170

KANSAS JUDICIAL REVIEW; THE HONORABLE CHARLES M. HART;
THE HONORABLE ROBB RUMSEY, *Plaintiffs*, v. MIKEL L. STOUT,
IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE KANSAS
COMMISSION ON JUDICIAL QUALIFICATIONS, *et al.*, *Defendants*.

(196 P.3d 1162)

Opinion filed December 5, 2008.

*Anita Young Woudenberg*, of Bopp Coleson & Bostrom, of Terre Haute, Indiana, argued the cause, and *James Bopp, Jr., Thomas J. Marzen, Susan Lee*, and *Josiah Neeley*, of the same firm, *Austin K. Vincent*, of Topeka, and *Richard Peckham*, of Andover, were with her on the briefs for plaintiffs.

*George T. Patton, Jr.*, of Bose McKinney & Evans LLP, of Indianapolis, Indiana, argued the cause, and *Marisol Sanchez*, of the same firm, *Stephen O. Phillips*, assistant attorney general, and *Stephen N. Six*, attorney general, were with him on the brief for defendants.

*Per Curiam*: The United States Court of Appeals for the Tenth Circuit, pursuant to K.S.A. 60-3201, submits five certified questions regarding the interpretation of various provisions of the Kansas Code of Judicial Conduct, Rule 601A (2007 Kan. Ct. R. Annot. 617). *Kansas Judicial Review v. Stout*, 519 F.3d 1107 (10th Cir. 2008). The case from which the questions arise is on appeal from a decision of the United States District Court for the District of Kansas, which granted a preliminary injunction against enforcement of the questioned judicial canons on the basis that they violated the First Amendment to the United States Constitution. See *Kansas Judicial Watch v. Stout*, 440 F. Supp. 2d 1209, 1239-41 (D. Kan. 2006).

These certified questions require this court to interpret three sections of the Kansas Code of Judicial Conduct (2007 Kan. Ct. R. Annot. 640): Canon 5A(3)(d)(i), Canon 5A(3)(d)(ii), and Canon 5C(2). Canon 5A(3)(d)(i)—the "pledges clause"—states that a can-

didate for judicial office "shall not . . . make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office." (2007 Kan. Ct. R. Annot. 641.) Canon 5A(3)(d)(ii)—the "commits clause"—states that a candidate for judicial office "shall not . . . make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court." (2007 Kan. Ct. R. Annot. 642.) Canon 5C(2)—the "solicitations clause"—states in relevant part that a candidate for judicial office "shall not personally . . . solicit publicly stated support . . . . A candidate subject to public election may, however, establish committees of responsible persons . . . to obtain public statements of support for his or her candidacy." (2007 Kan. Ct. R. Annot. 643-44.)

The five questions certified by the Tenth Circuit, and our respective answers to those questions, are as follows:

1. Does a judicial candidate violate Canon 5A(3)(d)(i) and (ii) by answering a questionnaire asking for his or her views on disputed legal and political issues?
   Answer: Perhaps, depending on the questions asked.
2. Does a judicial candidate solicit "publicly stated support" in violation of Canon 5C by personally collecting signatures for his or her nomination petition?
   Answer: Yes.
3. Does the definition of "the faithful and impartial performance of the duties of the office" in Canon 5A(3)(d)(i) include all conduct relevant to the candidate's performance in office?
   Answer: Yes.
4. Is the definition of "appear to commit" in Canon 5A(3)(d)(ii) limited to an objective appearance of a candidate's intent to commit himself or herself?
   Answer: Yes.
5. Does the definition of "publicly stated support" in Canon 5C(2) include endorsements of a candidate?
   Answer: Yes.

FACTUAL BACKGROUND

Plaintiffs Kansas Judicial Review, a political action committee, Robb Rumsey, previously a judicial candidate and now a state dis-

trict court judge, and Charles Hart, a state district court judge, filed an action in the United States District Court for the District of Kansas against members of the Kansas Commission on Judicial Qualifications and the office of the Disciplinary Administrator, seeking injunctive and declaratory relief under 42 U.S.C. § 1983 (2000). The plaintiffs claimed that the three aforementioned provisions of the Kansas Code of Judicial Conduct violated their rights to freedom of speech and freedom of assembly under the First Amendment to the United States Constitution. See *Kansas Judicial Watch*, 440 F. Supp. 2d 1209. The federal district court granted a preliminary injunction against enforcement of the judicial canons in question. 440 F. Supp. 2d at 1240-41.

The defendants appealed. The United States Court of Appeals for the Tenth Circuit determined that the plaintiffs' First Amendment claims "rest[ed] on sufficiently novel and determinative questions of state law" regarding the canons and that there were "important state policy interests at play" regarding the regulation of judicial conduct and the judicial process. *Kansas Judicial Review*, 519 F.3d at 1120. The Tenth Circuit decided not to reach the merits of the plaintiffs' claims before the Kansas Supreme Court had an opportunity to resolve the underlying questions of state law. 519 F.3d at 1120. The Tenth Circuit noted that if the Kansas Supreme Court were to interpret the provisions of our judicial code in such a way that the questionable conduct was permissible, the issues relating to the constitutionality of these provisions, which were reserved by the Tenth Circuit, might be eliminated. 519 F.3d 1120-22.

This court has jurisdiction to answer questions certified to it by a United States Court of Appeals under K.S.A. 60-3201, which provides that the Kansas Supreme Court may answer certified "questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state." Because certified questions must, by definition, turn on legal issues, this court's review of such questions is unlimited, subject only to the contours of the questions themselves. *Danisco Ingre-*

*dients USA, Inc. v. Kansas City Power & Light Co.*, 267 Kan. 760, 764-65, 986 P.2d 377 (1999). The underlying facts are not in dispute. The Tenth Circuit Court of Appeals provided the following factual background:

"A

"Kansas provides for popular election of some judges, holding partisan political contests for judicial office in 14 of its 31 judicial districts. The Kansas Supreme Court has adopted a Code of Judicial Conduct ('Code') regulating the behavior of judges and judicial candidates. See Kan. Sup. Ct. R. 601A [2007 Kan. Ct. R. Annot. 617]. Three bodies are involved in the interpretation and enforcement of the Code: the Judicial Ethics Advisory Panel ('JEAP'), the Commission, and the Kansas Supreme Court.

"JEAP was created by the Kansas Supreme Court to provide nonbinding ethical 'guidance' to persons subject to the Code. See Kan. Sup. Ct. R. 650 [2007 Kan. Ct. R. Annot. 665]. The panel is comprised of three retired judges, one of whom is usually a retired state Supreme Court justice, and panel members are appointed by the Kansas Supreme Court. Judges and judicial candidates may request advisory opinions interpreting the Code from JEAP. [Rule 650(b).] Although these advisory opinions are not binding on the Commission or the Kansas Supreme Court, the Commission must take into account a judge or candidate's reliance upon an advisory opinion in its investigation of an alleged violation of the Code. Kan. Sup. Ct. R. 650(f) [2007 Kan. Ct. R. Annot. 666]. According to Justice [Fred] Six, a former Commission member and a retired Kansas Supreme Court justice, judges in the state rely upon these opinions and consider them 'authoritative.'

"The Commission, also established by the Kansas Supreme Court, is charged with investigating allegations against judges and candidates, and recommending disciplinary action when necessary. See Kan. Sup. Ct. R. 602-21 [2007 Kan. Ct. R. Annot. 647-59]. Its 14 members are appointed by the Supreme Court and consist of a mix of judges, lawyers, and nonlawyers. Anyone may submit a complaint regarding the conduct of a judge or candidate to the Commission, with the majority of complaints coming from the general public. Each complaint received by the Commission is assigned to a seven-member panel for investigation. If the investigatory panel finds probable cause of a violation of the Code, it refers the matter to a seven-member hearing panel for a trial-like proceeding. There is no direct appeal of the investigatory panel's decision.

"Upon finding clear and convincing evidence of an ethics violation, the hearing panel may take several actions, ranging from an admonishment by the panel to a recommendation that the Kansas Supreme Court remove the judge from the bench. Although the hearing panel may rely on clearly established constitutional law, it may not consider novel constitutional arguments. Disciplinary recommendations made by the panel are automatically reviewed by the Kansas Supreme

Court. Factual findings of the hearing panel are subject to substantial evidence review.

"This case involves challenges to three Code clauses. Canon 5A(3)(d) provides that judicial candidates 'shall not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office' ('Pledges Clause') or 'make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court' ('Commits Clause'). Canon 5C(2) provides that 'a candidate shall not personally . . . solicit publicly stated support,' although candidates may establish committees to solicit support and campaign contributions on their behalf ('Solicitation Clause'). These clauses apply to all judicial candidates. See Kan. Sup. Ct. R. 601A [Terminology] (defining 'candidate') [2007 Kan. Ct. R. Annot. 619]; 601A (containing Canon 5) [2007 Kan. Ct. R. Annot. 640-45].

"B

"In February 2006, plaintiff [Kansas Judicial Review] KJR mailed a questionnaire and explanatory cover letter to all declared judicial candidates in Sedgwick County, Kansas. Candidates were asked to answer the questionnaire, designed to elicit views on a variety of legal and political issues. The cover letter asked that candidates answer the questionnaire, consistent with their ethical obligations under the Code. An option of declining to respond if candidates believed the Code prohibited answering was offered. KJR received seven responses, only one of which included substantive answers to the questionnaire. All other candidates marked the 'Decline to Respond' option.

"JEAP has issued two opinions addressing candidate questionnaires. In 2000, JEAP published advisory opinion JE 100, which states that a judicial candidate may not answer questionnaires sent by newspapers for the purpose of deciding whether to make an endorsement. The majority of the panel viewed the answering of such questionnaires as requests for public endorsement and concluded that a response would violate the Solicitation Clause. One panel member dissented and advanced the view that a candidate may answer such questionnaires but 'must be ever mindful of the Canons of Judicial Conduct, particularly Canon 5.' After JE 100 was published, the Commission attached a 'Note' to the opinion, stating that it was not bound by JEAP advisory opinions and adopted the minority view.

"In 2006, plaintiff Robb Rumsey, at the time a candidate for judicial office, asked JEAP whether he could respond to KJR's questionnaire. In advisory opinion JE 139, citing the Pledges and Commits Clauses, JEAP determined that because he was an announced candidate, Rumsey could not answer the questionnaire. Again, the Commission attached a 'Note' to the advisory opinion, rejecting JEAP's approach. Citing *Republican Party of Minnesota v. White*, 536 U.S. 765, [153 L. Ed. 2d 694, 122 S. Ct. 2528] (2002), the Commission adopted the principle that judicial candidates may publicly announce their views on legal and political issues. [This note was added on August 2, 2006, after the district court had issued a preliminary injunction in the present case.]

"Since adoption of the Canons, the Kansas Supreme Court has spoken to the Pledges Clause on one occasion, but has yet to address the other two clauses at issue. *In re Baker*, 218 Kan. 209, 542 P.2d 701 (1975), involved a candidate who was subjected to disciplinary proceedings after publicly pledging to be a 'full-time judge' and eliminate court delay. [218 Kan. at 212.] Rejecting the Commission's disciplinary recommendation, the court held that these statements relate to the faithful performance of official duties and did not violate the Pledges Clause. [218 Kan. at 212.]

"C

"Plaintiff Charles M. Hart, a state district court judge in Butler County, seeks to be a candidate for re-election in 2008. In order to qualify as a candidate, he requires a sufficient number of voters sign a nomination petition. In 2004, JEAP issued advisory opinion JE 117, declaring that a judicial candidate may not seek signatures for a nomination petition under the Solicitation Clause. Neither the Commission nor the Kansas Supreme Court has addressed JE 117 or the Solicitation Clause. Hart proposes to go door-to-door to collect these signatures, but will not do so because he fears discipline pursuant to the Solicitation Clause.

"D

"On May 24, 2006, KJR, Rumsey, and Hart filed a complaint against the Commission in federal district court, seeking injunctive and declaratory relief, and a motion for preliminary injunction. They requested that enforcement of the Pledges, Commits, and Solicitation Clauses be enjoined as being unconstitutionally overbroad and vague, and chilling candidates' political speech, thereby restricting the free exchange of views between candidates and potential voters. Additionally, plaintiffs argued that the Clauses were unconstitutional as applied to them. In response, the Commission asserted that KJR lacked standing to sue, this preenforcement challenge was not ripe, and the clauses were constitutional. It also requested certification of a question of state law to the Kansas Supreme Court, namely whether the Pledges and Commits Clauses function as the kind of prohibition on announcements struck down by the United States Supreme Court in *White*, 536 U.S. 765 . . . .

"After a hearing, the district court granted a preliminary injunction as to the Pledges, Commits, and Solicitation Clauses, and denied the remaining requests. The district court found that, despite not being subject to the Canons, KJR had standing to challenge them and that plaintiffs' claims were ripe for review. It also found that plaintiffs were likely to succeed on the merits of their claims that the Clauses were unconstitutional and that the other preliminary injunction factors weighed in their favor. The Commission filed a timely notice of appeal.

"On October 6, 2006, the district court denied both of the Commission's motions, for a stay of the injunction pending appeal and for certification of a question of state law to the Kansas Supreme Court. On November 3, 2006, a panel of this court granted the Commission's motion for a stay with respect to the portion of

the Solicitation Clause concerning a judicial candidate's personal solicitation of campaign contributions." *Kansas Judicial Review v. Stout,* 519 F.3d at 1111-14.

## DISCUSSION

The federal case underlying this certification request is the latest in a series of actions being brought throughout the United States in the wake of the United States Supreme Court's decision in *Republican Party of Minnesota v. White,* 536 U.S. 765, 153 L. Ed. 2d 694, 122 S. Ct. 2528 (2002). In that case, the Court held that the "announce clause" of Minnesota's Code of Judicial Conduct violated the First Amendment to the United States Constitution. 536 U.S. at 788.

In *White,* the canon stated that a " 'candidate for a judicial office, including an incumbent judge,' shall not 'announce his or her views on disputed legal or political issues.' " 536 U.S. at 768 (quoting Minn. Code of Judicial Conduct, Canon 5[A][3][d][i] [2000]). The Court held that this canon was an impermissible, content-based regulation of speech because it prohibited "a judicial candidate from stating his views on any specific nonfanciful legal question within the province of the court for which he is running." 536 U.S. at 773.

Notably, the *White* Court recognized that there was a difference between the announce clause at issue in that case and another section of the Minnesota code that prohibited "'pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office.' " 536 U.S. at 770, 812 (quoting Minn. Code of Judicial Conduct, Canon 5[A][3][d][i] [2002]). The Court indicated that it was expressing no view on this latter clause, explaining that " 'announc[ing] . . . views' on an issue covers much more than *promising* to decide an issue a particular way." 536 U.S. at 770. The Court further noted that the announce clause "extends to the candidate's mere statement of his current position, even if he does not bind himself to maintain that position after election." 536 U.S. at 770.

Since the 2002 *White* decision, several actions have been initiated to challenge provisions of various judicial codes. Most of these cases involve either "pledges clauses"—like that discussed briefly

in *White*—or "commits clauses"—where the canons generally prohibit candidates from committing to a position on cases, controversies, or issues that might come before them if they were to ascend to the bench. Jurisdictions have split as to whether the pledges and commits clauses are constitutional restrictions on judicial speech. See *Family Trust Foundation of Kentucky, Inc. v. Kentucky Judicial Conduct Comm'n*, 388 F.3d 224, 227-28 (6th Cir. 2004) (pledges and commits clauses are similar in scope to announce clause, unconstitutional); *Pennsylvania Family Institute, Inc. v. Celluci*, 521 F. Supp. 2d 351, 387 (E.D. Pa. 2007) (pledges and commits clauses narrowly construed, constitutional); *North Dakota Family Alliance, Inc. v. Bader*, 361 F. Supp. 2d 1021, 1044 (D. N.D. 2005) (pledges and commits clauses are similar in scope to announce clause, unconstitutional); *In re Kinsey*, 842 So. 2d 77, 87 (Fla. 2003) (pledges and commits clauses are different from announce clause, constitutional); *In re Watson*, 100 N.Y.2d 290, 301, 763 N.Y.S. 2d 219, 794 N.E.2d 1 (2003) (pledges clause different from announce clause, constitutional).

The Kansas Code of Judicial Conduct does not currently contain an announce clause—the clause at issue in *White*—as that clause was removed by this court in 1984. See *Kansas Judicial Watch*, 440 F. Supp. 2d at 1228. The case before us involves a challenge to Kansas' pledges and commits clauses, as well as a provision in the solicitations clause. See *Kansas Judicial Review*, 519 F.3d at 1112. The constitutionality of these clauses is not before us, as jurisdiction over the constitutional questions has been reserved by the Tenth Circuit. See 519 F.3d at 1122. Instead, the certified questions request this court to provide authoritative interpretations of the three canons of judicial conduct at issue in this case.

*Maxims of Interpretation and Scope of Review*

The Kansas canons of judicial conduct are contained in Supreme Court Rule 601A (2007 Kan. Ct. R. Annot. 617). The interpretation of a Supreme Court rule, like the interpretation of a statute, is a question of law. *Gerhardt v. Harris*, 261 Kan. 1007, 1010, 934 P.2d 976 (1997). For this reason, this court has emphasized on numer-

ous occasions that it is not bound by the Commission's interpretation of the judicial canons.

The most fundamental rule governing statutory interpretation is that "the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted." *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 378, 22 P.3d 124 (2001). Thus, when the language of a statute is plain and unambiguous, courts "need not resort to statutory construction." *In re K.M.H.*, 285 Kan. 53, 79-80, 169 P.3d 1025 (2007). Instead, "[w]hen the language is plain and unambiguous, an appellate court is bound to implement the expressed intent." *State v. Manbeck*, 277 Kan. 224, Syl. ¶ 3, 83 P.3d 190 (2004). Only where "the face of the statute leaves its construction uncertain" may the court look to "the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. [Citation omitted.]" *Robinett v. The Haskell Co.*, 270 Kan. 95, 100-01, 12 P.3d 411 (2000).

This court has also explained that "a statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. A statute must clearly violate the constitution before it may be struck down. [Citation omitted.]" *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 243, 834 P.2d 368 (1992). This court "not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute." *State v. Durrant*, 244 Kan. 522, 534, 769 P.2d 1174, *cert. denied* 492 U.S. 923 (1989).

These same principles apply where this court is called on to interpret its own rules. *Jarvis v. Drake*, 250 Kan. 645, 651-53, 830 P.2d 23 (1992). In these circumstances, this court is in the unique position of articulating its own intention for adopting particular provisions. If the language of a particular court rule is clear, this court is bound by that language. But if the language of a Supreme Court rule is subject to more than one reasonable interpretation,

we may authoritatively state which interpretation is most consistent with our intent in adopting the rule in question. See 250 Kan. at 651 ("If Rule 223 were ambiguous, then our intent in adopting the rule and amendment would be controlling."). For this reason, even though the questions certified in this case are legal questions in the sense that they require the interpretation of Supreme Court rules, we have a considerable amount of discretion in interpreting ambiguous language.

*Recommended Revisions to the Code of Judicial Conduct*

During oral argument before this court, the parties acknowledged—as the Commission indicated in a series of letters submitted to the court under Supreme Court Rule 6.09 (2007 Kan. Ct. R. Annot. 45)—that the Commission is in the process of recommending substantial amendments to the Kansas Code of Judicial Conduct based on the American Bar Association 2007 Model Code of Judicial Conduct. The Commission has presented its recommendations to this court. We have not considered these recommendations and have decided not to review these recommended revisions during the pendency of this case. The decision we file today is based upon our present Code of Judicial Conduct, the same code that was considered by the United States District Court and the Tenth Circuit. By putting off consideration of any amendments until this case has been decided, we avoid complicating the task of answering the Tenth Circuit's questions by changing the rules midstream. We also avoid any suggestion that the Commission's submission of new rules while this case is in progress might be an improper ex parte communication with a party in the case before us. Thus, although we are aware of the proposed revisions to Kansas' judicial code, we choose to decide the matter before us on the basis of the code in its present form.

I. DOES A JUDICIAL CANDIDATE VIOLATE CANON 5A(3)(d)(i) AND (ii) BY ANSWERING A QUESTIONNAIRE ASKING FOR HIS OR HER VIEWS ON DISPUTED LEGAL AND POLITICAL ISSUES?

ANSWER: Perhaps, depending on the questions asked.

We are not asked whether the particular questionnaire proposed by the Kansas Judicial Review (KJR) violated Canons 5A(3)(d)(i)

and (ii). Instead, as the question suggests, we are called on to consider whether, in the abstract, a judicial candidate's response to an issue-related questionnaire is permissible under these sections.

Canon 5A(3)(d)(i) states that a candidate for judicial office "shall not . . . make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office." 2007 Kan. Ct. R. Annot. 641. Canon 5A(3)(d)(ii) similarly provides that a candidate for judicial office "shall not . . . make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court." 2007 Kan. Ct. R. Annot. 642.

The comments to section 5A(3)(d) explain:

"Section 5A(3)(d) prohibits a candidate for judicial office from making statements that appear to commit the candidate regarding cases, controversies or issues likely to come before the court. As a corollary, a candidate should emphasize in any public statement the candidate's duty to uphold the law regardless of his or her personal views. . . . Section 5A(3)(d) does not prohibit a candidate from making pledges or promises respecting improvements in court administration. Nor does this Section prohibit an incumbent judge from making private statements to other judges or court personnel in the performance of judicial duties. This Section applies to any statement made in the process of securing judicial office, such as statements to commissions charged with judicial selection and tenure and legislative bodies confirming appointment." 2007 Kan. Ct. R. Annot. 642.

The determination as to whether answering an issue-related questionnaire violates either Canon 5A(3)(d)(i) or (ii) turns on our interpretation of the terms "pledges," "promises," and "commit." The decisions of other courts that have considered similar language to this state's pledges and commits clauses illustrate the ambiguity of these provisions. These cases vary widely in their conclusions as to whether the clauses cover all statements regarding disputed issues or are limited to statements that bind candidates' later decisions.

For example, a federal district court in the District of North Dakota found that "there is little, if any, distinction between the 'announce clause' which was struck down by the United States Supreme Court in *White*, and the 'commitment clause' and 'pledges and promises clause' contained in Canon 5A(3)(d)(i) and (ii) of the North Dakota Code of Judicial Conduct." *North Dakota*

*Family Alliance v. Bader*, 361 F. Supp. 2d at 1041. The court explained that each of these clauses—North Dakota's pledges clause and commits clause, and the announce clause in *White*—"forbid[s] . . . speech announcing a judicial candidate's views on disputed legal, political, or social issues." 361 F. Supp. 2d at 1041. The federal court thus found that "[t]here is no real distinction between announcing one's views on legal or political issues and making statements that commit, or 'appear to commit,' a judicial candidate with respect to cases, controversies, and issues that are likely to come before the court." 361 F. Supp. 2d at 1041; see also *Family Trust Foundation of Kentucky, Inc. v. Kentucky Judicial Conduct Comm'n*, 388 F.3d at 227-28 (explaining that the state of Kentucky had treated its pledges and commits clauses to bar mere announcing of particular viewpoints); *Buckley v. Illinois Judicial Inquiry Board*, 997 F.2d 224, 229 (7th Cir. 1993) (stating that Illinois' " 'pledges or promises' clause . . . is as overbroad as the 'announce' clause").

State courts reviewing these clauses have come to the opposite conclusion, finding clear distinctions between pledges and commits clauses, on the one hand, and *White*'s announce clause (which barred the mere expression of disputed viewpoints), on the other. This interpretation has been adopted by the highest courts of both New York and Florida. The New York Court of Appeals explained that

"statements that merely express a viewpoint do not amount to promises of future conduct. On the other hand, candidates need not preface campaign statements with the phrase 'I promise' before their remarks may reasonably be interpreted by the public as a pledge to act or rule in a particular way if elected. A candidate's statements must be reviewed in their totality and in the context of the campaign as a whole to determine whether the candidate has unequivocally articulated a pledge or promise of future conduct or decisionmaking that compromises the faithful and impartial performance of judicial duties." *In re Watson*, 100 N.Y.2d at 298.

The Florida Supreme Court came to a similar conclusion in *In re Kinsey*, 842 So. 2d at 87, where the court held that under the state's pledges and commits clauses,

"a candidate may state his or her personal views, even on disputed issues. However, to ensure that the voters understand a judge's duty to uphold the constitution and laws of the state where the law differs from his or her personal belief, the commentary encourages candidates to stress that as judges, they will uphold the law."

The most recent court to adopt this view was a federal district court in the Eastern District of Pennsylvania, which explained that the purpose of Pennsylvania's pledges clause "becomes clear when one realizes that a judge's job consists primarily of deciding cases or controversies in a particular way." *Pennsylvania Family Institute, Inc. v. Celluci*, 521 F. Supp. 2d at 376. The court found that the pledges clause barred judicial candidates from pledging "to rule a particular way on an issue, case, or controversy," but permitted more general promises that the candidates would "perform their judicial duties faithfully and impartially." 521 F. Supp. 2d at 376. The *Pennsylvania Family Institute* court similarly found that Pennsylvania's commits clause was drafted "with the goal of prohibiting judicial candidates from making statements that commit them to particular results." 521 F. Supp. 2d at 379.

This court has never interpreted the Kansas judicial code's commits clause and has considered the pledges clause on only one previous occasion. That case, *In re Baker*, 218 Kan. 209, 211-12, 542 P.2d 701 (1975), involved a challenge to the Commission's finding that a district judge had violated the pledges clause by making statements during his campaign for judicial office that he would be a " 'full time judge' " and that he would increase judicial efficiency. This court disagreed with the Commission's conclusion that the judge's statements violated the pledges clause, explaining:

"While the present Canon may appear broader in its prohibition against pledges and promises, its thrust was intended to be . . . pledges and promises which appeal to prejudices or special interest which are prohibited. . . . [A] pledge of increased efficiency such as was made here is aimed at the legitimate interests of the entire electorate; it is one of those pledges permitted as being for the 'faithful performance' of a judge's duties." 218 Kan. at 212-13.

The *Baker* court further opined that while a "candidate for non-judicial office is free to announce his stand on the issues he must pass upon in office, and to pledge his vote on those issues[,] the

judicial candidate is forbidden to enter this customary campaign arena." 218 Kan. at 213. The court noted that "the only legitimate area for debate is the relative qualifications of the candidates." 218 Kan. at 213.

As the facts underlying the case before us demonstrate, the Commission has altered its interpretation of the pledges clause over the course of the past 33 years. When the Judicial Ethics Advisory Panel (the Panel) issued its advisory opinion in JE 139 that the plaintiff judicial candidate in this case should not answer the KJR's questionnaire in 2006, the Commission disagreed. Citing the United States Supreme Court's decision in *White*, 536 U.S. 765, the Commission explained in a note added about 3½ months after the advisory opinion was issued that "judges and judicial candidates are allowed to publicly announce their views on legal, political, or other issues." 2007 Kan. Ct. R. Annot. at 673-74. This statement, while consistent with *White*, is not necessarily in keeping with this court's decision in *Baker*, where the court explained that "promises [that] appeal to prejudices or special interest . . . are prohibited." 218 Kan. at 212-13.

This court's opinion in *Baker* was decided almost three decades before the United States Supreme Court issued its opinion in *White*, which significantly changed the landscape of permissible judicial conduct throughout the country. Furthermore, the *Baker* decision is silent as to the scope of the commits clause. In light of this time span and of this court's duty to interpret rules and statutes in a constitutional manner as long as that interpretation is not inconsistent with the intent of the enacting authority, we find that this court's statements in *Baker* are not controlling as to the proper interpretation of the clauses before us today.

The conclusion that our prior case law does not resolve the issue before us fails to answer the question, however, as to whether a judge or judicial candidate may answer an issue-centered questionnaire without violating Canon 5A(3)(d)(i) or (ii). The answer to this question turns on what conduct is encompassed by the terms "pledge" and "promise" in the pledges clause and "commit" in the commits clause.

Webster's Third New International Dictionary 1739 (1976) defines "to pledge" as "to assure or promise the performance of" or "to promise seriously." "Promise" connotes similar meanings: "to engage to do or bring [something] about" or "to give ground for expectation." Webster's Third New International Dictionary 1815. Webster's explains that "promise indicates the giving of a stated assurance about some future act or action." Webster's Third New International Dictionary 1815.

It appears from these definitions that there is a qualitative difference between stating or announcing one's views on one hand and *pledging* or *promising* a particular course of conduct with respect to those views on the other. As the New York Court of Appeals indicated in *In re Watson,* "statements that merely express a viewpoint do not amount to promises of future conduct." 100 N.Y.2d at 298. The New York court's interpretation of its pledges clause emphasized that a "candidate's statements must be reviewed in their totality and in the context of the campaign as a whole to determine whether the candidate has unequivocally articulated a pledge or promise of future conduct or decisionmaking that compromises the faithful and impartial performance of judicial duties." 100 N.Y.2d at 298.

Other cases interpreting pledges clauses similar to that in our own canons have recognized that it is permissible under the Constitution to prohibit a candidate from making pledges or promises of certain results in a particular case but that prohibiting a wider range of conduct may fail strict scrutiny. See *Pennsylvania Family Institute, Inc.,* 521 F. Supp. 2d at 376-77; *In re Kinsey,* 842 So. 2d at 87; *In re Watson,* 100 N.Y.2d at 298. These clauses—interpreted narrowly to prohibit a candidate from making pledges and promises of certain results in particular cases, as contrasted to statements of viewpoints accompanied by assurances that the judicial candidate will conduct his or her judicial duties fairly and impartially—have been held to meet constitutional standards under the First Amendment. While there certainly is contrary authority, the ambiguity in the pledges clause permits this court to interpret the provision in accordance with our authority and duty to construe the canon constitutionally.

We hold that Canon 5A(3)(d)(i) prohibits a candidate for judicial office from making pledges or promises regarding a particular controversy or regarding certain results in a particular case that is bound to come before the candidate as judge. This interpretation is consistent with both this court's duty to construe rules in a constitutional manner, if possible, and this court's duty to provide a reasonable interpretation within the scope of the rule's language. The plaintiffs have not convinced this court that the language used in Canon 5A(3)(d)(i) somehow limits or prevents us from narrowly interpreting the pledges clause to pass constitutional muster.

The plaintiffs direct their primary argument regarding the constitutionality of Canons 5A(3)(d)(i) and (ii) to the commits clause (subsection [d][ii]), contending that this clause is not ambiguous and does not permit a judicial candidate to answer an issue-related questionnaire without doing violence to the intent of this court in adopting the canon in question. This argument is based upon a claim that the commits clause reaches speech broader than a pledge or a promise, barring not only statements that commit a candidate to a particular position but also statements that "appear to commit" the candidate to such a position. The plaintiffs argue that narrow interpretations of the commits clause only add confusion because such interpretations render the commits clause identical to the pledges clause.

In particular, the plaintiffs point to the commits clause's prohibition of statements committing candidates regarding "issues," arguing that this term indicates an intent of the drafters to reach more than pledges or promises of certain results in a particular case. According to the plaintiffs, the effect of the term "issues" is to essentially transform the commits clause into an announce clause, which was struck down by the United States Supreme Court in *White*. The plaintiffs argue that in order to narrowly interpret the clause so as to pass constitutional muster, this court would be required to strike the word "issues" from the language of Canon 5A(3)(d)(ii).

We are not convinced by these arguments. "Commit" connotes a similar meaning to "pledge" or "promise." "To commit" means to "obligate or bind to take some moral or intellectual position or

course of action" or "to pledge to some particular course or use: contract or bind by obligation to a particular disposition." Webster's Third New International Dictionary 457. If the term is construed in accordance with its common definition, it becomes clear that the term invokes more than the mere announcement of an opinion. Narrowly construed, the commits clause prohibits judicial candidates from making statements that bind them to a particular disposition with regard to a particular issue, a particular case, or a particular controversy bound to come before the candidate as judge. It does not prohibit candidates from stating a personal view on a disputed issue.

This interpretation is consistent not only with the common definition of "commit," but also with the other provisions in the Kansas Code of Judicial Conduct. Canon 4 of the code, for example, states that a "judge may speak, write, lecture, teach and participate in other extra-judicial activities concerning the law, the legal system, the administration of justice and non-legal subjects" as long as this behavior does not "cast reasonable doubt on the judge's capacity to act impartially as a judge." Canon 4B and 4A(1) (2007 Kan. Ct. R. Annot. 631). The commentary to this provision explains that judges are "encouraged" to "contribute to the improvement of the law, the legal system, and the administration of justice, including revision of substantive and procedural law and improvement of criminal and juvenile justice." Commentary, Canon 4B (2007 Kan. Ct. R. Annot. 631-32). We find it difficult to reconcile this provision of the code—which encourages debate on substantive legal issues—with the plaintiffs' position that the commits clause prevents judges and judicial candidates from commenting on any disputed legal or political issues. The fact that we abandoned this state's announce clause in 1984, see *Kansas Judicial Watch*, 440 F. Supp. 2d at 1228, but continue to encourage judges' participation in extra-judicial activities further supports the narrow interpretation of the commits clause that we adopt in this case.

Our interpretation of the pledges and commits clauses strikes a balance between the canons' encouragement of judges' engagement and participation in important legal discussions with the judges' primary responsibility of fair and impartial adjudication of

disputes coming before them. Announcing a judicial candidate's legal or political viewpoints is not prohibited. But a candidate who identifies a case or controversy or issue that is likely to come before him or her when on the bench and who proceeds to pledge or promise a particular result, or to commit to a particular resolution of that case, controversy, or issue, engages in behavior inherently inconsistent with the faithful and impartial performance of the duties of the judicial office. Interpreting the pledges and commits clauses in this manner is also consistent with our obligation to construe court rules in a constitutional manner and with our authority to adopt reasonable interpretations of ambiguous court rules.

It is clear from this discussion that merely answering an issue-related questionnaire does not necessarily violate Kansas' pledges or commits clauses. At the same time, it is virtually impossible to answer this first certified question in a definitive manner because questionnaires ask issue-related questions with various degrees of specificity and require various degrees of commitment from those who respond. For example, it would seem that a candidate's decision to respond to a questionnaire asking, "What is your stance on abortion?" is qualitatively different under the code from a candidate's decision to respond to a question, "Do you vow to overturn *Roe v. Wade*?" While an answer to the first of these questions would likely be a permissible announcement of a personal view on a disputed legal issue, an affirmative response to the second question would impermissibly bind a candidate to a particular legal action.

A second, perhaps less contentious example—though of equal importance when considering a judge's duties to decide cases fairly and impartially—might involve a survey that asks whether a judicial candidate would ever grant a downward departure sentence in a criminal conviction for abuse of a child. If a candidate chose to respond to this question substantively—and particularly if the candidate answered in the negative—the candidate's response would violate even our narrow interpretations of the pledges and commits clauses.

In summary, judges and candidates for judicial office may choose to answer issue-related questionnaires (though they are not in any

way required to do so) to the extent that the questionnaires call for the candidate's personal views on disputed legal or political issues. Canons 5A(3)(d)(i) and (ii) do prohibit a judicial candidate from answering issue-related questions, however, when giving responses would bind the candidate as a judge to a resolution of a particular case, controversy, or issue within a particular controversy. We stress that in answering any questionnaire, it is advisable—as the code's comments explain—that a candidate who makes a public statement "should emphasize . . . the candidate's duty to uphold the law regardless of his or her personal views" and to remain ever mindful of the impartiality that is essential to the judicial office. Commentary, Canon 5A(3)(d) (2007 Kan. Ct. R. Annot. 642).

## II. DOES A JUDICIAL CANDIDATE SOLICIT "PUBLICLY STATED SUPPORT" IN VIOLATION OF CANON 5C BY PERSONALLY COLLECTING SIGNATURES FOR HIS OR HER NOMINATION PETITION?

ANSWER: Yes.

Canon 5C(2), the "solicitations clause," states that a candidate for judicial office "shall not personally . . . solicit publicly stated support . . . . A candidate subject to public election may, however, establish committees of responsible persons . . . to obtain public statements of support for his or her candidacy." (2007 Kan. Ct. R. Annot. 643-44.)

It does not appear that this court or any other court has interpreted this provision of the judicial canons. The ambiguity in this statement centers on what is intended by "publicly stated support" and—specifically relating to the certified question now before us—whether a judicial candidate violates this provision by personally collecting signatures for his or her nominating commission.

In March 2004, the Panel issued an advisory opinion, JE 117, which states that "Canon 5C(2) . . . prohibits a candidate for a judgeship from personally soliciting publicly stated support. A signature on a public document would be 'publicly stated support.'" Neither the Commission nor the Kansas Supreme Court have been called on to review JE 117. Advisory opinions issued by the Panel

are not binding on this court. Supreme Court Rule 650(f) (2007 Kan. Ct. R. Annot. 666).

Webster's Third New International Dictionary defines the noun "support" in terms of its verb equivalent. "To support" means "to uphold by aid, countenance, or adherence: actively promote the interests or cause of," "to uphold or defend as valid, right, just, or authoritative: advocate," or "to pay the costs of: maintain." Webster's Third New International Dictionary 2297 (1976). These definitions illustrate "support" is generally taken to mean the promotion of a particular person or position or the provision of monetary aid.

We note that in the abstract, it may theoretically be possible that signatures on a nominating petition would not fall under either of these definitions. While a signature on a nominating petition could be intended to demonstrate that the signor supports the particular candidate for office, it may also mean that the signor generally supports people participating in the political process or running for a judicial office.

The statutory requirements of nominating petitions in Kansas eliminate this potential ambiguity, however, and require us to answer that a judicial candidate's personal collection signatures for that candidate's nominating petition violates Kansas' solicitations clause. K.S.A. 2007 Supp. 25-205(b) provides that "[n]o signature shall be counted unless it is upon a sheet" having the content of Form PP. Form PP contains the following language applying to all signors: "I further declare that I intend to support the candidate herein named and that I have not signed and will not sign any nomination petition for any other person, for such office at such primary election." K.S.A. 2007 Supp. 25-205(c) further provides that "[e]ach signer of a nomination petition shall sign but one such petition for the same office, and shall declare that such person intends to support the candidate therein named."

When read in conjunction with the solicitations clause, the plain language of K.S.A. 2007 Supp. 25-205 makes it clear that by personally asking someone to sign a nomination petition, a judicial candidate is "personally solicit[ing] . . . publicly stated support" in violation of Canon 5C(2).

III. DOES THE DEFINITION OF "THE FAITHFUL AND IMPARTIAL PERFORMANCE OF THE DUTIES OF THE OFFICE" IN CANON 5A(3)(d)(i) INCLUDE ALL CONDUCT RELEVANT TO THE CANDIDATE'S PERFORMANCE IN OFFICE?
ANSWER: Yes.

The plaintiffs argue that the provision of the pledges clause that states that a candidate for judicial office shall not make pledges or promises "of conduct in office other than the faithful and impartial performance of the duties of the office" does not include all judicial conduct and is therefore too narrow to survive strict scrutiny under the First Amendment. See Canon 5A(3)(d)(i) (2007 Kan. Ct. R. Annot. 641). According to the plaintiffs, the pledges clause prohibits judicial candidates from making any pledges or promises relating to judicial philosophy or anything else that would influence their actions as a judge.

This argument is not consistent with the previous conclusion that general statements relating to a candidate's opinions as to disputed issues are permissible under the pledges clause, nor can it be reconciled with this court's previous interpretation of that clause in *In re Baker*, 218 Kan. 209, 542 P.2d 701 (1975).

In *Baker*, this court explained that candidates could make statements regarding their "health, work habits, experience and ability" because such matters were "of legitimate concern to the electorate who must make the choice." *Baker*, 218 Kan. at 213. These topics would be outside the realm of acceptable discussion under the plaintiffs' proposed interpretation, yet this court has permitted such topics to be discussed for more than 30 years. Under our interpretation of the pledges clause articulated in response to the first certified question in this opinion, it is clear that such topics involve questions as to the judge's faithful performance of his or her judicial duties.

We emphasize that the types of statements that the plaintiffs claim to be barred by the pledges clause—statements regarding judicial philosophy or statements that a particular candidate would be tough on crime—are not inconsistent with a judge's duty to faithfully and impartially perform the duties of judicial office. A

judge's identification of himself or herself as a strict constructionist does not mean that the judge cannot be impartial and does not guarantee a particular result in a case any more than any other judicial philosophy might. A statement that a judge will be tough on crime does not mean that the judge will not or cannot apply the law fairly and impartially. It is only when a judge's or judicial candidate's statements bind that person's resolution of the cases that would come before him or her that the conduct becomes impermissible under the pledges clause.

Finally, Canon 3A of the Code of Judicial Conduct explains that a judge's "judicial duties include all the duties of the judge's office prescribed by law." (2007 Kan. Ct. R. Annot. 624.) We interpret the "faithful . . . performance of the duties of the office," as described by the pledges clause (2007 Kan. Ct. R. Annot. 641), to include all conduct relevant to the judge's official actions—from judicial philosophy when deciding cases to work habits to education and ability.

IV. IS THE DEFINITION OF "APPEAR TO COMMIT" IN CANON 5A (3)(d)(ii) LIMITED TO AN OBJECTIVE APPEARANCE OF A CANDIDATE'S INTENT TO COMMIT HIMSELF OR HERSELF? ANSWER: Yes.

The plaintiffs in this case argue that the language in the commits clause prohibiting statements that "commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court" involves a subjective analysis and is therefore unconstitutionally vague. See Canon 5A(3)(d)(ii) (2007 Kan. Ct. R. Annot. 642). The Commission argues that the "appear to commit" language indicates that an objective, reasonable-person standard is appropriate.

The Commission's objective interpretation is consistent with this court's previous case law. In *State v. Logan*, 236 Kan. 79, 86, 689 P.2d 778 (1984), this court explained under a different provision of the Kansas judicial code:

"The standard which federal courts use is whether the charge of lack of impartiality is grounded on facts that would create reasonable doubt concerning the judge's impartiality, *not in the mind of the judge himself, or even, necessarily, in*

*the mind of the litigant filing the motion, but rather in the mind of a reasonable person with knowledge of all the circumstances.* [Citations omitted.]" (Emphasis added.)

During oral argument, counsel for the plaintiffs acknowledged that the "appear to commit" language in Canon 5A(3)(d)(ii) requires a similar objective analysis of the judge's or judicial candidate's conduct to that described in *Logan.*

It became clear during the parties' arguments before this court that the plaintiffs' claim regarding objectivity is not actually a textual argument that the commits clause requires a subjective standard for interpreting judicial conduct—which is contrary to the plain language of the canon and to our previous opinions interpreting such language as objective in nature—but rather is a constitutional claim as to the chilling effect of regulating judicial speech. We will not consider the merits of this argument in detail, as the constitutionality of the commits clause is not before us at this time. The question over which we have jurisdiction is whether the "appear to commit" language in Canon 5A(3)(d)(ii) involves an objective or subjective standard.

We do note, however, that taken to its logical end, the plaintiffs' argument would imply that any regulation of judicial speech would violate the First Amendment, as a listener could always understand the speech in the wrong way. Not only is this extreme view unsupported by the case law, but we believe that this state's objective standard for reviewing judicial speech protects against such fears, as the reasonable-person standard involves an analysis of the conduct from the perspective of a person with knowledge of the applicable rules and surrounding circumstances. See *Logan,* 236 Kan. at 86.

We conclude therefore that Canon 5A(3)(d)(ii)'s prohibition against statements that "appear to commit" judicial candidates "with respect to cases, controversies or issues that are likely to come before the court" requires an objective analysis of the conduct in question from the perspective of a reasonable person with knowledge of all of the circumstances. See 2007 Kan. Ct. R. Annot. 642.

## V. Does the definition of "publicly stated support" in Canon 5C(2) include endorsements of a candidate? Answer: Yes.

Finally, this court is called on to determine whether the solicitations clause of Canon 5C(2)—which states that a judicial candidate "shall not personally . . . solicit publicly stated support"—permits candidates to respond to questionnaires requested by newspapers or other media for the purpose of providing an endorsement for the upcoming election or to otherwise seek endorsements for judicial office. See 2007 Kan. Ct. R. Annot. 643-44.

The parties in this case focus on the definitional differences between "support" and "endorsements." We find these terms to be synonymous. See Webster's Third New International Dictionary 2297 ("support"), 749 ("endorsement"). If there is any actual difference between the two terms, endorsements are a particular subset of public support. Because the solicitations clause explicitly prohibits judges and judicial candidates from personally soliciting "publicly stated support," the clause necessarily prohibits judicial candidates from personally soliciting endorsements. Such solicitations must be delegated to the candidate's campaign committee. See Canon 5C(2) (2007 Kan. Ct. R. Annot. 643-44).

Because Canon 5C(2) explicitly prohibits judges and judicial candidates from soliciting endorsements, the answer to this certified question turns on whether the judge or candidate is soliciting the endorsement or merely responding to a public questionnaire. *Webster's* defines "to solicit" as "to endeavor to obtain by asking or pleading" or "to seek eagerly or actively." Webster's Third New International Dictionary 2169.

The underlying facts in this case illustrate the importance of determining whether a judicial candidate's conduct amounts to a solicitation of public support. When a judicial candidate engages in conduct discussed previously by *personally* seeking signatures on a nominating petition (rather than having his or her campaign solicit such signatures), such conduct is impermissible in this state, as it amounts to a personal request for the signor's endorsement of the judicial candidate. But when a newspaper or other media

source submits questions to a judicial candidate and the candidate responds, and this exchange results in an endorsement, we conclude that the candidate is not actively seeking support or endorsement in violation of the canons. In the first example, the judicial candidate is actively seeking an endorsement. In the second, the request originated from the media source, not the candidate.

Judges and judicial candidates are not permitted under the solicitations clause to personally and actively seek endorsements of their judicial candidacies. Judges and judicial candidates may respond, however, to requests regarding their viewpoints on disputed issues, as long as such responses do not otherwise violate the canons.

LUCKERT, J., not participating.

LEBEN, J., assigned.