CORRECTED OPINION[1]

No. 124,674

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ROBERT QUINN,
*Appellant,*

v.

STATE OF KANSAS,
*Appellee.*

1.

The date the clerk of the appellate court issues the mandate in a case, which the court can shorten or extend at the court's discretion, is not tethered to the date the action is final for purposes of filing a K.S.A. 60-1507 motion.

2.

The time frame for filing a K.S.A. 60-1507 motion runs from the date of the decision denying review, not the date the clerk of the appellate courts issues the mandate.

3.

The date of the mandate issued by the clerk of the appellate courts does not change if a corrected mandate is subsequently filed.

4.

A prisoner has no right to appointed counsel to help the prisoner file a K.S.A. 60-1507 motion.

---

[1]**REPORTER'S NOTE**:  *Quinn v. State*, No.124,674, was corrected by adding additional language on pages 6-7 and amending language on page 10.

5.

The doctrine of res judicata applies to a K.S.A. 60-1507 movant who seeks to raise issues which have previously been resolved by a final appellate court order in their criminal case.

Appeal from Wyandotte District Court; AARON T. ROBERTS, judge. Opinion filed November 23, 2022. Affirmed.

*Rosie M. Quinn*, of Rosie M. Quinn Attorney LLC, of Kansas City, for appellant.

*Kayla Roehler*, deputy district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., BRUNS and HURST, JJ.

ARNOLD-BURGER, C.J.:  Robert Quinn appeals the summary denial of his claim for relief under K.S.A. 60-1507 as well as the court's failure to appoint an attorney to represent him. Because we find that Quinn was not entitled to an attorney to help him file a K.S.A. 60-1507 motion and because Quinn's motion is both untimely and barred by res judicata, we affirm.

FACTUAL AND PROCEDURAL HISTORY

A jury convicted Quinn of rape in 2011. He appealed and this court affirmed his conviction. *State v. Quinn*, No. 109,321, 2015 WL 423653 (Kan. App. 2015) (unpublished opinion). In his direct appeal, he argued that the district court erred in denying him a new trial based on the ineffectiveness of his trial counsel, Charles Lamb. The district court held an evidentiary hearing on his claim of Lamb's ineffectiveness in which several witnesses including himself and Lamb testified. The court issued detailed findings in denying his motion. On appeal this court agreed that Quinn had failed to

2

establish that Lamb's representation was ineffective and affirmed his conviction. 2015 WL 423653, at *11. The clerk of the appellate courts issued the mandate in August 2015 after his petition for review was denied by the Supreme Court.

Over five years later, in January 2021, Quinn filed his only motion under K.S.A. 60-1507 alleging ineffective assistance of counsel and the "victim lied." In detailing his claim against Lamb he wrote, "He didn't request lie detector test. He didn't question her on her supposed rape." As to the veracity of the victim, he claimed "[s]he lied about using drugs that night" and "[s]he lied when she said I ripped her clothes." He asked that the court appoint a lawyer for him. Quinn did not make these specific claims about Lamb in his direct appeal although he made many others. The court denied the request and summarily denied his motion as untimely in September 2021. Quinn filed a timely notice of appeal in November 2021.

In March 2022, Quinn's appellate counsel filed a motion with the clerk of the appellate courts to recall the mandate it had issued in August 2015. She argued that the mandate did not adhere to the usual and customary procedures of mandates because it did not recite the denial of the petition for review by the Supreme Court or the date of it, did not have the seal of the court affixed to it, and the copy of the decision was not certified. This court granted the motion and issued a corrected mandate on April 19, 2022.

ANALYSIS

I.   QUINN'S 60-1507 MOTION WAS UNTIMELY

Prisoners must file motions under K.S.A. 2021 Supp. 60-1507(f) for postconviction relief within one year of "[t]he final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction." Here, the Kansas Supreme Court denied Quinn's petition for review in his

3

direct appeal on August 20, 2015. The clerk of the appellate courts issued the mandate August 25, 2015. Nothing else was filed by Quinn, such as a motion of rehearing or modification or a notice of intent to file a petition for a writ of certiorari. Quinn was therefore required to file any motion under K.S.A. 60-1507 no later than August 2016. His motion was not filed until January 2021, over four years after the statutory deadline.

Quinn argues, for the first time on appeal, that his K.S.A. 60-1507 motion was not untimely because the one-year time limit did not start until the filing of the corrected mandate in April 2022.

Generally, parties cannot raise issues on appeal that they did not raise before the trial court. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). There are a few exceptions to this rule that may be invoked at the discretion of the appellate court. *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020) (holding that the decision to review an unpreserved claim under an exception is a prudential one—even if one of these exceptions would support a decision to review a new claim, the appellate court need not do so). Quinn invokes such an exception here. He argues that it is a question of law that should determine this case.

Since the answer is clear in our existing caselaw and does not require any fact-finding by the district court, we elect to address Quinn's new claim.

### a. *Our standard of review is de novo.*

Interpretation of an appellate court mandate and its effect is a question of law subject to de novo review. *State v. Morningstar*, 299 Kan. 1236, 1240-41, 329 P.3d 1093 (2014). Likewise, to the extent that our analysis requires statutory interpretation, our review is de novo. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019). And

4

finally, the interpretation of a Supreme Court rule, like interpreting a statute, is a question of law. *Kansas Judicial Review v. Stout*, 287 Kan. 450, 459, 196 P.3d 1162 (2008).

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be established. *State v. LaPointe*, 309 Kan. 299, 314, 434 P.3d 850 (2019). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *State v. Ayers*, 309 Kan. 162, 164, 432 P.3d 663 (2019).

> b. *The final order of the last appellate court in the state to exercise jurisdiction is the date the Supreme Court denies the petition for review if such a petition is filed.*

So we start with the language of the statute governing 60-1507 actions:

> "(1) Any action under this section must be brought within one year of:
> (A) The final order of the last appellate court in this state to exercise jurisdiction
> on a direct appeal or the termination of such appellate jurisdiction; or
> (B) the denial of a petition for writ of certiorari to the United States supreme
> court or issuance of such court's final order following granting such petition." K.S.A.
> 2021 Supp. 60-1507(f).

Procedures governing petitions for review "shall be prescribed by rules of the supreme court." K.S.A. 20-3018(b). Next, we turn to the rules of the Kansas Supreme Court to determine when a Court of Appeals decision is final. "The Court of Appeals decision is final as of the date of the decision denying review." Rule 8.03(h) (2022 Kan.

5

S. Ct. R. at 59). This rule is repeated in subsection (k)(4) (2022 Kan. S. Ct. R. at 61): "If a petition for review is denied, the Court of Appeals decision is final as of the date of the denial." We believe the plain language of the statute and Rule 8.03 control the result here. The final order of the last appellate court in this state to exercise jurisdiction on a direct appeal would be the denial of the petition for review by our Supreme Court. The termination of such appellate jurisdiction would be the date of the Court of Appeals opinion when no petition for review is filed, or the date of dismissal of the appeal for any variety of reasons. Accordingly, the time frame for filing a 60-1507 motion runs from the date of the decision denying review, not the date the clerk of the appellate courts issues the mandate as Quinn suggests.

We recognize that both the Supreme Court and our court have filed cases measuring the time to file a 60-1507 motion from the date the mandate was issued—although the issue has never been squarely presented to it, nor was the date of the mandate versus the date the judgment was final determinative. See, e.g., *White v. State*, 308 Kan. 491, 421 P.3d 718 (2018); *Rowell v. State*, 60 Kan. App. 2d 235, 490 P.3d 78 (2021). Our court has often cited *Tolen v. State*, 285 Kan. 672, 176 P.3d 170 (2008), for the proposition that appellate jurisdiction ends upon the denial of a petition for review, not the date of the mandate. See *Sellers v. State*, No. 116,923, 2018 WL 2072656, at *2 (Kan. App. 2018) (unpublished opinion) (finding that appellate jurisdiction terminates when the Supreme Court denies a petition for review, not when the clerk of the appellate courts issues the mandate); *Burton v. State*, No. 100,555, 2009 WL 4639354, at *1 (Kan. App. 2009) (unpublished opinion) (same). Given the unique facts of *Tolen*, which revolved around whether Tolen could take advantage of a one-year grace period following the amendment to K.S.A. 60-1507 in 2003, its citation for a conclusion that the date of the mandate is irrelevant is a bit of a stretch. But it is clear that the court did not track the loss of jurisdiction to the date of the mandate.

We also concede that our holding here is contrary to Supreme Court Rule 183(c)(4) (2022 Kan. S. Ct. R. at 243) which does appear to tether a 60-1507 action to the date of the mandate:

> "[A] motion under K.S.A. 60-1507 must be filed no later than one year after the later of:
>
> (A) the date the mandate is issued by the last appellate court in this state which exercises jurisdiction on a movant's direct appeal or the termination of the appellate court's jurisdiction; or
>
> (B) the date the United States Supreme Court denies a petition for the writ of certiorari from the movant's direct appeal or issues its final order after granting the petition."

But our Supreme Court has made clear that a court rule cannot expand a statutory deadline. *Jones v. Continental Can Co.*, 260 Kan. 547, 557-58, 920 P.2d 939 (1996). And the Legislature clearly knows how to tether the filing of an action to the mandate, because it did so in K.S.A. 2021 Supp. 21-6702(d)(2) ("If an appeal is taken and determined adversely to the defendant, such sentence may be modified within 120 days after the receipt by the clerk of the district court of the mandate from the supreme court or court of appeals."). But K.S.A. 60-1507 does not contain language tethering the filing deadline to the date of the mandate. It tethers it only to the (1) final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or (2) the termination of such appellate jurisdiction. The mandate is issued by the clerk of the appellate courts. It is not signed by the court. The final order of the last appellate court would be, in this case, the order denying Quinn's petition for review. See Rule 8.03(h) (2022 Kan. S. Ct. R. at 59).

Even more telling is the fact that Rule 183(c)(4) does not equate the issuance of the mandate with the termination of appellate jurisdiction—the second clause in Supreme Court Rule 183(c)(4)(A). And that makes sense.

7

The purpose of the mandate is to advise the trial court that the appellate court has returned jurisdiction to it. The statute refers to the date "a decision of an appellate court becomes final" and requires the court to "promptly cause to be transmitted" the mandate to the district court containing directions. K.S.A. 60-2106(c). In other words, after the decision is final, the clerk of the appellate courts issues the mandate advising the district court that it has returned jurisdiction to it. Our rules require that the district court take specific actions in criminal cases upon receipt of the mandate. See Supreme Court Rule 4.02(f) (2022 Kan. S. Ct. R. at 30) (requiring that upon receipt of the mandate, the court order the defendant to appear or issue a warrant for the defendant). Likewise, Supreme Court Rule 7.03(b)(1)(A)(ii) (2022 Kan. S. Ct. R. at 46) requires that the mandate be filed seven days after denial of the petition for review. The mandate serves solely as notice to the district court that the decision of the court has become final and includes any instructions for further action that the district court must take. See K.S.A. 60-2106(c). The mandate itself does not make the decision final, it is simply notice to the district court that the final decision in the case has been made and the date of that decision.

Moreover, if a motion for rehearing is filed in the Court of Appeals, although the filing stays the issuance of the mandate it does not extend the time for petitioning for review with the Supreme Court. Supreme Court Rule 7.05(b) (2022 Kan S. Ct. R. at 51). These are separate processes. The date the mandate is issued, which can be shortened or extended at the court's discretion, is not tethered to the date the action is final—although it cannot be issued until the decision is final. See Rule 7.03(b)(1)(B).

And finally, there is no statutory or court rule requirement that the defendant ever receive a copy of the mandate. Only the clerk of the district court has a right to receive the mandate along with a certified copy of the decision. Rule 7.03(b). The Supreme Court has long recognized its power to recall, correct, amplify, or modify its own mandate. See, e.g., *West v. Insurance Co.*, 105 Kan. 414, 415-16, 185 P. 12 (1919). It is not unusual for the court to even enter a supplemental mandate, rather than simply filing a "correct[ed]"

8

mandate as here. *Union Central Life Ins. Co. v. Irrigation L. & T. Co.*, 146 Kan. 545, 547, 73 P.2d 70 (1937).

It would be impractical for the date the mandate is issued to start the clock running for filing a motion under K.S.A. 60-1507, when the defendant is not required to receive a copy of the mandate. On the other hand, the court sends copies of the decision to the attorney of record, and if none, a copy is sent to the defendant on the date the decision is filed. Rule 7.03(a). So the defendant is aware of the only relevant date—the date the decision denying the petition for review is filed. Quinn does not contend that his attorney did not receive a copy of the opinion in his direct appeal or that he did not receive notice that his petition for review had been denied. To tether the finality of the judgment to the date of the mandate in a 60-1507 action would make the time to appeal a fluid concept based on when the clerk of the appellate courts happens to prepare and file the mandate even if the prisoner is not notified of it.

   c.   *The date of the mandate does not change if it is subsequently amended or corrected.*

Moreover, even if the date of the mandate were tethered to the filing of an action under K.S.A. 60-1507, the date does not change if a corrected mandate is subsequently filed. So Quinn's filing would still be untimely. This is similar to the process of filing a nunc pro tunc to correct an error in a journal entry. Our Supreme Court has made clear that the "judgment is one thing. The record of the judgment is a different thing." *Tafarella v. Hand*, 185 Kan. 613, 617, 347 P.2d 356 (1959). Like a mandate, the court can correct the journal entry at any time either on motion of a party or on its own motion. And as the court said in *Tafarella*, the correction does not make an order "now for then" but corrects an entry now that the court has already entered. 185 Kan. at 618 (citing *Bush v. Bush*, 158 Kan. 760, 763, 150 P.2d 168 [1944]). And a court's entry of a nunc pro tunc order does not affect the finality of the sentence. *State v. Hood*, No. 112,332, 2016 WL

9

463742, at \*4 (Kan. App. 2016) (unpublished opinion) (citing *State v. Mason*, 294 Kan. 675, 677, 279 P.3d 707 [2012]). It has "the same effect as if filed in the first instance." *Ramsey v. Hand*, 185 Kan. 350, 361, 343 P.2d 225 (1959). To hold otherwise would allow parties to reopen cases for collateral challenge due solely to clerical or technical errors in the mandate—errors that did not affect the *finality* of the court's decision.

> d. *The date of the mandate can be significant in conjunction with the filing of a notice of intent to file a writ of certiorari with the United States Supreme Court.*

We pause to note that there are some circumstances when our court has cited the date of the mandate as important to the outcome of an unrelated case. These unpublished cases appear to be limited to circumstances in which the court is trying to determine whether a change in the law has occurred during the pendency of a direct appeal, thus allowing a party to receive the benefit of the change without having argued its application at trial. And they rely on the procedure set out in K.S.A. 2021 Supp. 22-3605(b) (automatically staying a mandate when a notice of intent to file a petition for a writ of certiorari is filed). For example, in *State v. Kelly*, No. 123,118, 2022 WL 881700, at \*6 (Kan. App. 2022) (unpublished opinion), *rev. denied* 316 Kan. ___ (September 30, 2022), the issue was the application of *State v. Boettger*, 310 Kan. 800, 450 P.3d 805 (2019) (finding a portion of the criminal threat statute to be unconstitutional), to a trial after our Kansas Supreme Court decided *Boettger* but while the mandate had been statutorily stayed due to the State's filing of notice of intent to petition for a writ of certiorari with the United States Supreme Court. See K.S.A. 22-3605(b)(1)(A). Our court found that although our Supreme Court had entered the decision it was not controlling while awaiting a decision from the United States Supreme Court. That decision came and the mandate was issued several months after Kelly was sentenced but before his direct appeal was final. We found that under these circumstances Kelly could argue the application of *Boettger* for the first time on appeal. 2022 WL 881700, at \*6. But we also note that our

Supreme Court reports the *Boettger* decision as final on October 25, 2019—not the date the mandate was issued in 2020. See *State v. Herrman*, No. 122,884, 2022 WL 569737, at *2 (Kan. App. 2022) (unpublished opinion) (same although it involves application of *Boettger* to Herrman's criminal history score), *rev. denied* 316 Kan. ___ (September 30, 2022). And, none of these cases suggest or even touch on an argument that the one-year time limit to file a motion under K.S.A. 60-1507 is controlled by the date the mandate is issued.

Treatment of the finality of a decision in the case when a petition for a writ of certiorari is filed matches the procedure followed when a petition for review is filed in a Court of Appeals decision. The decision of our court does not become final until the petition for review is denied by the Kansas Supreme Court. Likewise, for purposes of postconviction relief on a Kansas appellate case in which a party has requested a writ of certiorari, the case would not be final for purposes of postconviction relief until the United States Supreme Court denies the request. The statute seems to anticipate that in those situations the automatic stay on the mandate is automatically lifted with the filing of the denial of the petition for a writ of certiorari. K.S.A. 2021 Supp. 22-3605(b)(3). So the dates are the same.

In sum, Quinn's petition for review was denied on August 20, 2015. The mandate was issued just five days later. Quinn does not claim any prejudice from the errors in the original mandate. They did not prevent him from filing a timely 60-1507 motion. In fact, he concedes he never received a copy of the mandate, so he could not have relied on it. And finally, the date of the mandate did not change based on a subsequent correction issued by the clerk of the appellate courts.

Quinn's time in which to file a motion under K.S.A. 60-1507 ended in August 2016. We agree with the district court that his motion was untimely.

11

II.     THE DISTRICT COURT DID NOT ERR IN FAILING TO APPOINT COUNSEL FOR QUINN

Quinn argues that the district court erred in summarily denying his K.S.A. 60-1507 motion without first appointing an attorney for him.

When the district court denies a 60-1507 motion based only on the motion, files, and records appellate courts exercise de novo review. *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014). And though we liberally construe pro se pleadings, a person filing such a motion still must allege facts that warrant a hearing. *Mundy v. State*, 307 Kan. 280, 304, 408 P.3d 965 (2018). Conclusory allegations with no evidentiary basis in the record are not enough to carry the movant's burden. 307 Kan. at 304.

A prisoner has no right to appointed counsel to help file a 60-1507 motion. *Stewart v. State*, 310 Kan. 39, 44, 444 P.3d 955 (2019) (noting no state or federal constitutional right to pursue a postconviction collateral attack). The purely statutory right to counsel arises only after the petition is filed.

The court must appoint counsel for an indigent prisoner if the 60-1507 motion they have filed presents "substantial questions of law or triable issues of fact." 310 Kan. at 46. Or if the prisoner is not entitled to counsel but the court conducts a hearing at which the State is represented by counsel, the court must appoint counsel to even the playing field under concepts of due process. Otherwise, it is a purely discretionary call by the district court whether to appoint counsel. The court does have the authority to summarily deny a prisoner's 60-1507 motion without appointing counsel if the "files and records of the case, including any response to the motion from the State, conclusively show that the [prisoner] is entitled to no relief under that motion." 310 Kan. 39, Syl. ¶ 4.

Here there was no hearing conducted in which the State was represented, and Quinn was not. The court decided the case based solely on its review of the files and

12

records in the case and found it to be untimely. Accordingly, Quinn had no constitutional or statutory right to counsel to assist him at any stage, including the filing of the motion.

III.     QUINN HAS FAILED TO ESTABLISH MANIFEST INJUSTICE TO EXCUSE THE UNTIMELINESS OF HIS MOTION UNDER K.S.A. 60-1507

    *a.  A court may excuse an untimely K.S.A. 60-1507 motion on a showing of manifest injustice.*

A defendant has one year from when a conviction becomes final to file a 60-1507 motion. K.S.A. 2021 Supp. 60-1507(f)(1). The district court may extend this limit only to prevent a manifest injustice. K.S.A. 2021 Supp. 60-1507(f)(2). A defendant who files a motion under K.S.A. 2021 Supp. 60-1507 outside the one-year time limitation and fails to affirmatively assert manifest injustice is procedurally barred from maintaining the action. *State v. Trotter*, 296 Kan. 898, 905, 295 P.3d 1039 (2013).

The Kansas Legislature has defined manifest injustice as limited to "determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence." K.S.A. 2021 Supp. 60-1507(f)(2)(A).

Quinn asserts that this exception applies to him. He does not claim actual innocence, but instead believes the reason he failed to file the action within one year justifies a finding of manifest injustice. He asserts that his filing was untimely because he detrimentally relied on the honest belief that the district court had appointed or was appointing counsel to help him file his motion. Under such circumstances, he claims it is manifestly unjust to hold him to the one-year limitation. A few more facts are necessary to provide context for Quinn's claim.

13

For reasons which are unclear from the record, in September 2016—over a year after the decision was final in this case—Judge Michael Grosko appointed an attorney, Gerald Wells, to represent Quinn for "[a]ppeal." Wells had no contact with Quinn. In June 2017—almost two years after the decision was final in this case—Quinn wrote the court asking for assistance in completing a 60-1507 motion form. He asked for the day he was sentenced and the first name of his trial attorney, Lamb. He also noted "I have asked for an attorney from Judge Roberts and Judge Lampson. I haven't heard back from them." No other filings appear in the case, and in March 2018 Judge Aaron Roberts appointed Gerald Wells to represent Quinn for a "K.S.A. 60-1507" although no such motion had been filed. In November 2018, Wells moved to withdraw noting that all issues pending on appeal had been resolved and essentially there was nothing for him to represent Quinn on. The district court allowed him to withdraw.

In July 2020, Quinn again wrote to the court. He told the judge he had been trying to get an attorney for his 60-1507 hearing, but no one had contacted him. He said the court had appointed a lawyer, but the lawyer had "declined to take my case." He asked for the appointment of a lawyer. The same month, Judge Robert Burns responded that there was no pending 60-1507 motion filed on his behalf, so there was no reason to appoint an attorney for him. Six months later, Quinn filed the 60-1507 motion currently before us—the only one ever filed in this case. In September 2021, Judge Roberts denied Quinn's request for counsel and summarily denied his 60-1507 motion as untimely.

  b.  *Quinn did not meet his burden to establish manifest injustice.*

That brings us to the heart of Quinn's argument. The court dismissed his K.S.A. 60-1507 motion as untimely. He does not dispute that it was untimely when arguing manifest injustice. He also does not dispute that his motion was "on its face clearly deficient." He concedes that he did not mention manifest injustice, he did not state why he filed it more than a year after August 2016, and he did "not recite any logical facts to

14

support actual innocence." But he claims applying the one-year time limit to him is manifestly unjust because the court did not appoint an attorney to assist him even though he had repeatedly requested one and the court led him to believe the court had appointed him one. He contends that an attorney would have corrected the facially defective portions of his motion so that he would have succeeded, and that the absence of counsel excuses his failure to meet the one-year time limit.

We find this claim unpersuasive for at least three reasons.

First, as already explained, Quinn had no right to counsel either constitutionally or statutorily to help him file a 60-1507 motion. So failing to have one appointed cannot give rise to manifest injustice.

Second, Quinn's time to file a 60-1507 motion expired in August 2016. He did not even ask about filing a motion until June 2017. And there is no indication in the record that he was even aware the court had appointed an attorney for him—albeit erroneously—until the court allowed attorney Wells to withdraw in November 2018. Again, well past the August 2016 deadline. That the court may have erroneously appointed counsel in the past when no action was pending—years after the statutory deadline to file a 60-1507 motion had passed—does not establish detrimental reliance by Quinn.

And finally, and most importantly, Quinn admittedly did not claim either manifest injustice or actual innocence in his motion. This alone bars his current claim.

In sum, we find Quinn has not met his burden to establish manifest injustice to justify an untimely filing under K.S.A. 60-1507 under these facts.

15

IV.    QUINN'S MOTION IS BARRED BY RES JUDICATA

Because we review the record de novo, we also note that—as the State argues in its brief and to which Quinn fails to respond—even if we were to assume his motion was timely or that it was untimely but excused on the basis of manifest injustice, Quinn's motion is barred on the basis of res judicata.

The doctrine of res judicata provides that "'where an appeal is taken from the sentence imposed and/or a conviction, the judgment of the reviewing court is res judicata as to all issues actually raised, and those issues that could have been presented, but were not presented, are deemed waived.'" *State v. Kingsley*, 299 Kan. 896, 901, 326 P.3d 1083 (2014). The doctrine of res judicata applies to a 60-1507 movant who seeks to raise issues which have previously been resolved by a final appellate court order in their criminal case. *Drach v. Bruce*, 281 Kan. 1058, Syl. ¶ 14, 136 P.3d 390 (2006); *Woods v. State*, 52 Kan. App. 2d 958, Syl. ¶ 1, 379 P.3d 1134 (2016). A 60-1507 motion cannot substitute for a second appeal. But as with most rules, there is an exception. If a movant can establish exceptional circumstances that prevented raising the issue in the direct appeal, he may be able to avoid this prohibition. Exceptional circumstances can include ineffective assistance of counsel. *Woods*, 52 Kan. App. 2d at 964; Supreme Court Rule 183(c)(3) (2022 Kan. S. Ct. R. at 243). Exceptional circumstances are unusual events or intervening changes in the law that prevented the defendant from raising the issue in the preceding 60-1507 motion. *Beauclair v. State*, 308 Kan. 284, 304, 419 P.3d 1180 (2018).

This court determined in Quinn's direct appeal that "Quinn has failed to establish that Lamb's actions fell below an objective standard of reasonableness or that Lamb's alleged deficiencies prejudiced him." *Quinn*, 2015 WL 423653, at *12. Quinn does not argue any exceptional circumstances prevented him from alleging that his attorney was ineffective for not requesting a lie detector test and not questioning the victim "on her supposed rape" together with the many other points of ineffectiveness he alleged in his

16

direct appeal. In addition, an unsupported and conclusory statement about the veracity of the victim absent new and compelling evidence is not an exceptional circumstance warranting collateral relief. See *Mundy*, 307 Kan. at 304 (finding that conclusory allegations with no evidentiary basis in the record are not enough to carry the movant's burden).

So Quinn's motion also fails based on res judicata.

For these reasons, we affirm the decision of the district court summarily denying Quinn's K.S.A. 60-1507 motion.

Affirmed.

\* \* \*

HURST, J., concurring: I concur with my colleagues in the judgment based solely on the majority's opinion that res judicata bars Quinn's current K.S.A. 60-1507 motion.